LaShonda ROSE, as Next Friend of C.D. and K.D., and Ezola Rose, as Next Friend of R.C., Appellants,

v.

BEN C. HEBERT HEIRS, Hebert–Green, L.L.P., C. Doornbos, Inc., C. Doornbos Heirs, Labelle Properties, Ltd., Labelle General, L.L.C., William & Opal Doornbos Trust, Appellees.

No. 09–09–00055–CV.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 11, 2009.

Decided Feb. 4, 2010.

Michael D. Myers, McClanahan Myers Espey, L.L.P., Houston, for appellants.

Mark Allen, Joseph E. Stowers, Tekell, Book, Matthews & Limmer, L.L.P., John R. Shepperd, Marjorie L. Cohen, Wilson Elser, Moskowitz, Edelman & Dicker, L.L.P., Noel Anne Lewandos, Law Office of Evan Kramer, Houston, for appellees.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

This is an appeal from the trial court's order granting the appellees' no-evidence motions for summary judgment. We affirm.

### Background

On the night of July 5, 2002, LaShonda Rose drove a car that struck a black bull on State Highway 87. Rose and her three minor passengers, C.D., K.D.,[1] and R.C., were injured in the collision.

On September 27, 2007, C.D., K.D., and R.C. ("the Minors") sued the landowner-defendants ("the Landowners"). In their petition, the Minors alleged that the bull had escaped from property owned by the Landowners, and that the Landowners were negligent in permitting the bull to roam at large. The Minors also alleged that the Landowners negligently failed to ensure that the gates on the premises were locked and failed to install cattle guards at the pasture's gate.

After answering the Minors' suit, the Landowners[2]—Labelle Properties, Ltd.; Labelle General L.L.C.; Ben C. Hebert Heirs; Hebert–Green, L.L.P.; C. Doornbos, Inc.; C. Doornbos Heirs; and the William & Opal Doornbos Trust—filed no-evidence motions for summary judgment. Each of the Landowners' respective motions for summary judgment assert there is no evidence of a duty to the Minors, no evidence of any breach of any duty to the Minors, and no evidence that any of their

---

1. K.D., twenty-two months old at the time of the collision, suffered catastrophic injuries. The summary judgment evidence includes a Life Care Cost Analysis projecting that K.D. will incur lifetime medical expenses in excess of fifteen million dollars.

2. Three families, the Doornboses, the Labelles, and the Heberts, together with certain entities owned or controlled by various individuals from the three families, jointly own the land from which the bull allegedly escaped. In a prior suit, the Minors settled claims against the bull's alleged owners, Hollis Gilfillian and H.C. Youmans. Youmans and Gilfillian were not named as parties in this suit.

acts proximately caused the Minors' injuries.

Several facts are not disputed in this appeal. At the time of the collision, the pasture from which the bull allegedly escaped was leased by the Landowners to H.C. Youmans.[3] Additionally, the Landowners did not own the bull involved in the collision.

The parties also do not dispute that under Texas common law, there is no duty to restrain livestock. Even though there is no duty at common law, the parties agree that Texas statutes may create personal duties to restrain livestock. *See Gibbs v. Jackson*, 990 S.W.2d 745, 747–50 (Tex.1999) (declining to adopt a general common law duty to ensure that livestock do not stray onto farm-to-market roadways, but considering possible statutes that could create such a duty).

The Minors' summary judgment evidence includes two leases between Youmans and the families that jointly own the pasture. The Minors' brief, however, refers only to one of the two leases, the Doornbos lease.[4] The Doornbos lease provides, in pertinent part:

### ARTICLE 4. USE OF PREMISES AND RESTRICTIONS

1. Lessee shall have the right to graze cattle and other livestock, and Lessor specifically reserves the full use of the premises for any and all purpose(s) other than those for which same are specifically leased to Lessee. (For example, Lessor reserves the hunting and trapping rights and the right to lease the premises for hunting and trapping.) This lease shall be subservient to the exercise by Lessor and Lessors' other tenants of all other rights, and Lessee's rights hereunder are and shall be subordinate to any other leases or permits presently existing or which may during the term hereof be granted by Lessor.

2. Lessee shall not be allowed to do any hunting or trapping on said premises.

3. During the term of this lease, Lessee agrees to maintain all roads, fences, pens, gates, sheds, and other improvements on the premises and, upon termination thereof, to return same to Lessor in as good condition as presently exists.

4. Lessee will patrol and protect the leased premises against trespassers.

5. Lessee will not make or allow any unlawful, improper, or offensive use to be made of said premises and will execute, comply with, and fulfill all laws, orders, and requirements imposed by all governmental authorities and agencies applicable to the use for which said

---

**3.** While the Landowners do not dispute their ownership of the land leased to Youmans, they currently dispute whether they had sufficient control over the bull to restrict it to the pasture on the date of the collision.

**4.** The Doornbos lease was executed June 14, 1996, and then renewed annually. The Labelle–Hebert–Green lease, the other pertinent lease issued by the remaining Landowners, was executed July 13, 2001. The two leases both grant grazing rights to Youmans; require that Youmans pay for any required or necessary improvements; impose an obligation on Youmans to maintain all fences, gates, and other improvements on the leased premises; and reserve to the owners all rights not granted to the lessee. With the exception of one additional obligation in article four of the Labelle–Hebert–Green lease, the two leases contain identical provisions regarding the lessee's use of the property. The additional provision in the Doornbos lease requires Youmans to keep the gates on the property locked and requires that he notify the lessors as soon as practicable of any failure to "maintain cattle within the confines of the premises...." If violated, the notification provision further provides the lessors with the right to declare the lease in default.

premises are leased to him and pay all taxes or other charges which shall during the term hereof accrue, or become due and payable, because of his use of the leased premises and will permit no agent, employee, contractor, licensee, or invitee of Lessee, to violate any laws, rules, or regulations applicable to the use for which said premises are leased.

6. All improvements of whatever kind necessary for the use of said premises for the purposes herein stated shall be made by Lessee at his expense.

Subsequently, after a hearing, the trial court granted the Landowners' respective motions for summary judgment. Four days before signing the summary judgment orders, the trial court sent a letter to the parties stating:

> ... [The Texas Agriculture Code,] § 143.024[,] simply states that "a person may not permit" an animal to run at large. To adopt plaintiffs' theory of liability would be tantamount to strict liability on a (potentially absent) premises owner under § 143.024 whereas the lessee/owner (with day-to-day responsibility for the livestock) would only be liable if found to have "knowingly" permitted the cattle to roam free.
>
> Black's Law Dictionary (6th Ed.) defines "permit" as follows: [']**Permit**, v., to suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act.['] Each of these concepts presupposes knowledge on the part of the person permitting a particular act. Even the failure to prevent is a form of acquiescence which, likewise, would require knowledge.
>
> Accordingly, the Court finds as a matter of law that there was no duty on the part of defendants and, further, there is no evidence of any breach of the duty. Therefore, defendants' Motions for Summary Judgment will be granted. . . .

## Issue

On appeal, in a single issue, the Minors advance several arguments asserting the trial court erred in granting the Landowners' motions for summary judgment. Specifically, the Minors argue that the trial court erred (1) in finding the Landowners owed the Minors no duty, (2) in requiring the Minors to show that the Landowners had knowledge of the presence of the bull on the highway, and (3) in ruling there was no evidence that the Landowners had breached the duties they owed to the Minors under section 143.074 of the Texas Agriculture Code. *See* Tex. Agric. Code Ann. § 143.074 (Vernon 2004).

In response to the Minors' appellate arguments, the Landowners assert they are not responsible to control a bull they did not own and argue that they did not knowingly permit the bull to roam unattended. Additionally, the Landowners contend that the local stock law option provision,[5] adopted by Jefferson County voters in 1933,[6] is void. In the alternative, if the local stock option law is valid, the Landowners contend there is no evidence that they violated any duty imposed by the statute.

## Standard of Review

■ The appeal requires that we consider the trial court's interpretation of section 143.074 of the Texas Agriculture Code.[7]

---

**5.** *See* Tex. Agric. Code Ann. §§ 143.071–.082 (Vernon 2004).

**6.** *See* "Order Declaring Results of Stock Law Election—Horses, Mules, Jacks, Jennets & Cattle—Jefferson County as A Whole," at page 894 of the clerk's record on appeal.

**7.** We assume, without deciding, that section 143.074 of the Texas Agriculture Code is not void as it relates to Jefferson County. On appeal, the Landowners contend that Jefferson County could not legally adopt section 143.074. They further assert that imposing liability on them as owners of land in Jeffer-

The trial court, in resolving the Landowners' motions for summary judgment, interpreted section 143.074 of the Agriculture Code in a manner requiring the Minors to prove the Landowners, before the collision, had knowledge of the bull's escape from its pasture.

With respect to the trial court's interpretation of a statute, we review matters of statutory construction as questions of law under a de novo standard of review. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex.2006). After construing the statute, we then determine whether the trial court properly resolved the Landowners' no-evidence motions for summary judgment. We review a trial court's decision to grant a no-evidence motion for summary judgment under the standards set forth in Rule 166a(i) of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 166a(i).

To defeat a no-evidence summary judgment motion, the non-movant must produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged by the movant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). The non-movant raises a genuine issue of material fact by producing "more than a scintilla of evidence" establishing the challenged ele-

ment's existence. *Id.* More than a scintilla of evidence exists when the evidence is such that reasonable and fair-minded people can differ in their conclusions. *Id.* at 601. If " 'the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.' " *Id.* (quoting *Kindred v. Con/ Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)). In determining whether the non-movant has produced more than a scintilla of evidence, we review the evidence in the light most favorable to the non-movant, and we give credit to such evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006).

### The Parties' Arguments

The Minors do not claim that they are owed a duty of care under Texas common law; instead, they cite two Texas statutes that serve as the basis of the duties owed to persons who strike large domestic animals while traveling on a road.[8] The first statute, section 143.102 of the Agriculture Code, applies to "[a] person who owns or has responsibility for the control of a

---

son County by virtue of section 143.074 would deprive them of their property without due process of law. That argument is premised on their claim that section 143.072 of the Agriculture Code expressly prohibited Jefferson County from conducting a countywide election to adopt the local option stock law. *Compare* Tex. Agric Code Ann § 143.074 (Vernon 2004) *with* Tex. Agric. Code Ann § 143.072 (Vernon 2004). Although an interesting argument, and one that the Landowners raised in the trial court, we must defer deciding whether the order adopting the local option stock law in Jefferson County is void. "Judicial restraint cautions that when a case may be decided on a non-constitutional ground, we should rest our decision on that ground and not wade into ancillary constitu-

tional questions." *VanDevender v. Woods*, 222 S.W.3d 430, 432 (Tex.2007). Like the trial court, which also chose not to wade into the Landowners' challenge to the validity of the statute, we likewise choose to decide the dispute on another issue.

**8.** In their brief, the Minors acknowledge that "[t]here is no common law duty in Texas to restrain livestock." *See Gibbs v. Jackson*, 990 S.W.2d 745, 746 (Tex.1999). As the Minors do not contend that they are owed a duty at common law, we do not further address whether any common law duty exists. *See* Tex.R.App P. 47.1 (opinion must address every issue raised as necessary to final disposition of the appeal).

horse, mule, donkey, cow, bull, steer, hog, sheep, or goat[,]" and prohibits such person from "knowingly permit[ting] the animal to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE ANN. § 143.102 (Vernon 2004). Without further explanation, the Minors' brief states that this provision "is not applicable here."[9] The second statute that creates duties on the part of individuals to restrain roaming livestock, and the one upon which the Minors rely, is found at section 143.074 of the Agriculture Code. *See* TEX. AGRIC. CODE ANN. § 143.074. According to the Minors, this statute requires persons to exercise reasonable care over their property to prevent cattle from roaming at large. *Id.* On appeal, and consistent with their arguments in the trial court, the Landowners assert there is no evidence from which a reasonable inference can be made that they knowingly permitted a bull to roam at large on State Highway 87.[10] The Minors disagree that section 143.074 requires proof that the Landowners knowingly permitted the bull's escape. In summary, the Minors contend that the Landowners can be held liable under the facts of this case (1) if the Landowners knew or should have known that their conduct could permit cattle to escape from their land, and (2) if, in light of that knowledge, the Landowners failed to exercise reasonable care under the circumstances.

The Minors argue that they met their burden of producing some evidence to demonstrate that the Landowners owed a duty to them, and they further contend that they marshaled evidence to show that the Landowners were negligent. Specifically, the Minors point to the deposition transcript of Youmans, who testified that a cattle guard would make it less likely that a cow could successfully escape through a pasture's open gate. They also point to their proof that it was foreseeable that cattle could escape through an open gate.

## Analysis

In construing a statute, we are to "determine and give effect to the Legislature's intent." *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). In determining the Legislature's intent, our review is not confined to isolated words, phrases, or clauses, "but rather we examine the entire act to glean its meaning." *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90 (Tex.2001); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (instructing courts to construe words and phrases in context). "We look first to

9. In response to the Labelle defendants' motion for summary judgment, the Minors' argued that the Landowners violated section 143.102 of the Agriculture Code. Subsequently, in their response to the Hebert–Green's and the Doornboses' motions for summary judgment, the Minors stated that they were not asserting a negligence claim against these defendants under section 143.102 of the Agriculture Code. Based upon their brief, it now appears that the Minors do not claim that section 143.102 applies to any of the defendants. As the Minors do not contend the trial court erred in failing to consider whether section 143.102 creates duties owed to them, any question concerning whether it applies to the Landowners is also not before us. *See* TEX.R.APP. P. 38.1(i); *Pat*

*Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex.1998); *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993).

10. The Landowners also argue that section 143.102 of the Agriculture Code is the controlling provision for highways. *See* TEX. AGRIC. CODE ANN. § 143.107 (Vernon 2004). Therefore, they conclude that the Legislature never intended the local option stock provision, found in section 143.074, and which is not restricted to any specific roadway, to also apply to a collision that occurred on a highway. *See* TEX. AGRIC. CODE ANN §§ 143.074, 143.102 (Vernon 2004). It is unnecessary that we reach this alternative argument in resolving the appeal. *See* TEX.R.APP P. 47.1.

the statute's language to determine that intent, as we consider it 'a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.'" *Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex.2008) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999)). "If the statute's language is unambiguous, its plain meaning will prevail." *Id.*

Because the Legislature did not define the term "permit" in Chapter 143 of the Agriculture Code, we first address its likely meaning.[11] When determining whether a given statute is ambiguous, we consider, among other things, (1) the statute's objectives; (2) the circumstances under which the statute was enacted; (3) the statute's legislative history; (4) common law, former law, and similar provisions; (5) the consequences of a particular construction; (6) if pertinent, any administrative agency constructions of the statute in issue; and (7) the statute's title (caption), preamble, and emergency provision. TEX. GOV'T CODE ANN. § 311.023(1)–(7) (Vernon 2005); *see also In re Canales,* 52 S.W.3d 698, 702 (Tex.2001). We also presume that the Legislature intended a just and reasonable result. TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2005); *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex. 2001).

Terms not specifically defined by statute are construed according to the rules of grammar and common usage. *See* TEX. GOV'T CODE ANN. § 311.011(a). Dictionaries determine a word's common use. "Permit" means "1 : to consent to expressly or formally : grant leave for or the privilege of : ALLOW, TOLERATE < ~ smoking> < ~ an appeal> < ~ access to records> 2 : to give (a person) leave : AUTHORIZE ... 3 *archaic* : to give over : COMMIT ... 4 : to make possible <building has been divided ... to ~ an unobstructed view— *Amer. Guide Series: Conn.>* ...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1683 (2002) (examples omitted following definitions 2 and 3).

In contrast to the arguments advanced by all of the parties, we note that section 143.074 does not utilize the terms "negligence" or "knowingly" to define the scope of the duty created by section 143.074. *See* TEX. AGRIC. CODE ANN. § 143.074. However, in defining the statutory penalty for a violation of section 143.074, the Legislature limits the persons subject to being fined to those who "knowingly permit[ ]" cattle to run at large. TEX. AGRIC. CODE ANN. § 143.082 (Vernon 2004). Section 143.082 provides:

(a) A person commits an offense if the person knowingly permits a head of cattle or a domestic turkey to run at large in a county or area that has adopted this subchapter.

(b) An offense under this section is a Class C misdemeanor.

*Id.*

By examining section 143.074's penalty provision, it appears unlikely that the Legislature intended to extend the duty to include any person who, in any abstract sense, could be said to have "made possible" the escape of livestock from a pasture. Construing section 143.074 broadly, in our opinion, would do violence to the overall context of Chapter 143. For example, construing "permit" to mean "made possible"

11. In support of the trial court's judgment, the Landowners also argue that the Minors produced no evidence to explain how the bull escaped the pasture. We do not discuss this argument. Instead, we focus on whether the Minors, in response to the Landowners' summary judgment motions, produced any evidence to show that the Landowners permitted cattle to roam at large in violation of a statutory duty that we have *assumed* applies to Landowners pursuant to section 143.074 of the Agriculture Code.

could impose a statutory duty on a manufacturer of barbed-wire when a strand of wire rusts and breaks, thereby making possible the escape of cattle from a pasture. In light of the Legislature's choice to restrict the reach of the statute's penalty provision to those who "knowingly" permit cattle to roam at large, we are skeptical that the Legislature intended the duty it created in section 143.074 to extend to any person "who makes possible" the escape of cattle from a pasture.

We conclude that the Legislature likely intended "permit" to mean "to consent to expressly or formally," or to mean "to give leave." These two definitions of the word "permit" found in Webster's Third New International Dictionary appear to us to be the word's common meaning.[12]

■ We are not to enlarge the plain meaning of a statute by enlarging on a word's common meaning. *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.,* 235 S.W.3d 695, 701 (Tex.2007) ("[W]e do not expand the meaning of statutes by implication[.]"); *see also Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002) ("When construing a statute, we ascertain the Legislature's intent from the plain meaning of the actual language used."); *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex.1994) ("In applying the plain and common meaning of the language in a statute, courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written.").

■ Next, we turn to whether the summary judgment evidence contains any

evidence, even a scintilla, that the Landowners "permitted" the bull to roam at large. Having reviewed the record, we are unable to find any evidence showing that the Landowners "permitted" the bull to roam at large. Nothing in the record indicates the Landowners visited the property or that they had entered the gate at any point in time relevant to the date of the collision. There is no evidence that any of the Landowners left the gate open. We find no evidence that the Landowners authorized the bull's owner, the lessee that was granted grazing rights, or any hunters that held hunting rights, the right to leave the gate open. There is no evidence that the Landowners authorized either Youmans or Gilfillian the right to run cattle at large. There is also no evidence that the Landowners had been notified of the bull's escape prior to the collision, and there is no evidence that the Landowners were aware that any cattle had previously escaped from the pastures they leased. Finally, there is no evidence that the pasture's fence and its gate were not fit for the ordinary uses for which they were intended. In summary, there is no summary judgment evidence to raise any inference that the Landowners "permitted" the bull's escape as prohibited by the Legislature in section 143.074 of the Texas Agriculture Code.

After a careful review of the Landowners' motions for summary judgments and a thorough examination of the Minors' responses to these motions, we agree with the trial court that the Minors failed to meet their burden of producing evidence to show that the Landowners breached section 143.074.[13] We hold the trial court, on

12. We also doubt that the Legislature intended to adopt an archaic meaning of "permit," so we do not further discuss the sense of "permit" when used to mean "to give over."

13. We reiterate that we have assumed for purposes of this appeal that the local option stock law can validly apply in Jefferson County: we expressly reserve deciding whether Jefferson County could validly adopt the local option stock law.

this record, properly granted the Landowners' motions for summary judgment. Consequently, we affirm the trial court's orders.

AFFIRMED.