

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00043-CV

PILAR RODRIGUEZ, APPELLANT

V.

SANDHILL CATTLE CO., L.P., APPELLEE

On Appeal from the 242nd District Court
Castro County, Texas
Trial Court No. B9163-1004, Honorable Edward Lee Self, Presiding

March 10, 2014

## OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Pilar Rodriguez sued Sandhill Cattle Co., L.P., for damages arising from his colliding with cattle on a roadway after midnight. The cattle belonged to Sandhill and had been pastured at a location several miles from the accident scene. The pasture was surrounded by a functioning "hot-wire" when the cattle were left there. Sometime later, a portion of the cattle escaped the pasture and roamed the area. It was later discovered that the "hot-wire" had been broken.

At trial and after Rodriguez "rested," Sandhill moved for a directed verdict contending that its opponent had failed to prove a violation of the local stock law. The trial court agreed, granted the motion, and entered judgment for Sandhill. Rodriguez appealed. He contends that 1) the trial court applied an incorrect legal standard in granting the directed verdict and 2) some evidence of negligence appeared of record precluding entry of a directed verdict. We affirm the judgment.

Much like when we review a summary judgment, we review a directed verdict by determining whether the evidence before the trial court created a material issue of fact. *Prudential Ins. Co. of America v. Financial Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex. 2000) (stating that a directed verdict is proper when a plaintiff fails to present probative evidence raising a fact issue on the material questions involved in the suit). This requires us to view the evidence in the light most favorable to the party against whom the judgment was entered and resolve all reasonable inferences arising from that evidence in a manner favorable to the non-movant. *Yorkshire Ins. Co. v. Seger,* 279 S.W.3d 755, 772 (Tex. App.—Amarillo 2007, pet. denied).

Next, no one questions that in Texas there exists no common law duty to restrain cattle within fences. *Gibbs v. Jackson,* 990 S.W.2d 745, 747-48 (Tex. 1999); *accord Palmer v. Hinders*, No. 07-99-0341-CV, 2000 Tex. App. LEXIS 3657, at *4 (Tex. App.—Amarillo June 1, 2000, no pet.) (not designated for publication) (stating that Texans have no common law duty to fence their domestic animals such as cows and horses). Rather, they agree that the duty underlying Rodriguez' complaint is a creature of statute and arises under § 143.074 of the Texas Agriculture Code. The latter provides that "a person may not permit" livestock "to run at large in the county or area in which" a local

stock law was adopted by popular vote.[1]  TEX. AGRIC. CODE ANN. § 143.074(a) (West 2004).  The county (that is, Castro County) wherein Sandhill pastured its cattle was one such county.

Next, the duty being a creature of statute, its scope is defined by the statute creating it.  *Meritor Automative, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 89 (Tex. 2001).  So, our focus lies upon the words "permit" livestock "to run at large" for that is what our legislature said a person could not do.  And, with that in mind, we note the recent decision from a sister court in *Rose v. Hebert Heirs,* 305 S.W.3d 874 (Tex. App.—Beaumont 2010, no pet.).  There, Rose struck a bull that escaped its enclosure and sued the landowners contending that they were negligent in permitting the bull to roam at large.  This resulted in the court having to construe § 143.074 of the Agriculture Code and what was meant by the word "permit."  Given the lack of any statutory definition of the word, the *Rose* court turned to authority requiring it to assign the word its common or plain meaning, *id.* at 881; TEX GOV'T CODE ANN. § 311.011(a) (West 2013), and found that meaning to be "'to consent to expressly or formally' or . . .'to give leave.'"  *Rose v. Hebert Heirs*, 305 S.W.3d at 881.  Then, it applied that definition and ultimately held that the plaintiffs "failed to meet their burden of producing evidence to show that the Landowners breached section 143.074."  *Id.* at 881-82.

---

[1] Permitting livestock to run at large may also be a class C misdemeanor.  However, the statute making it so, § 143.082 of the Texas Agriculture Code, differs from § 143.074 in one important way.  It adds the word "knowingly" before permit; that is, it states: "A person commits an offense if the person knowingly permits a head of cattle . . . to run at large in a county . . . ." TEX. AGRIC. CODE ANN. § 143.082 (West 2004).  The Supreme Court suggested in *Beck v. Sheppard*, 566 S.W.2d 569 (Tex. 1978), that "knowingly" encompassed "'an intention to do the act complained of or such negligence as is tantamount to a wilful act.'"  *Id.* at 572, *quoting Jackson v. Overby*, 185 S.W.2d 765 (Tex. Civ. App.—Eastland 1945, no writ).  So, one could reasonably deduce that from the absence of the modifier "knowingly" in § 143.074, proof of intentional conduct or negligent conduct tantamount to a wilful act would not be necessary when suit is founded upon § 143.074.

The analysis undertaken by the *Rose* court in affirming the trial court also merits comment. It searched the record and then said:

> . . . we are unable to find any evidence showing that the Landowners "permitted" the bull to roam at large. Nothing in the record indicates the Landowners visited the property or that they had entered the gate at any point in time relevant to the date of the collision. There is no evidence that any of the Landowners left the gate open. We find no evidence that the Landowners authorized the bull's owner, the lessee that was granted grazing rights, or any hunters that held hunting rights, the right to leave the gate open. There is no evidence that the Landowners authorized either Youmans or Gilfillian the right to run cattle at large. There is also no evidence that the Landowners had been notified of the bull's escape prior to the collision, and *there is no evidence that the Landowners were aware that any cattle had previously escaped from the pastures they leased. Finally, there is no evidence that the pasture's fence and its gate were not fit for the ordinary uses for which they were intended.*

*Id.* (Emphasis added). The nature of the evidence found missing indicates that the court's interpretation of "permit" did not simply include conscious or knowing conduct on the part of the individual who purportedly gave the bull leave to roam. Rather, it also encompassed conduct undertaken by one who failed to act reasonably under the circumstances. Allusion to 1) knowing whether the animal previously escaped from other pastures and 2) whether the facilities were "fit for the ordinary uses for which they were intended" suggest as much. Indeed, it would strain belief to conclude that unreasonable conduct (or conduct differing from what an ordinarily prudent person would engage in under the circumstances) could never indicate permission to allow cattle to roam. For instance, tethering a grown bull's hoof to a stake via a piece of household sewing thread will hardly deter the bull from moving in any meaningful way. While that may indicate some subjective desire to prevent the bull from roaming, a prudent person should find fault in the effort. So, under that

4

circumstance, it would be reasonable for a fact finder to deduce that the conduct was tantamount to giving the animal leave to roam. *See Gibbs v. Jackson,* 990 S.W.2d at 749-50 (discussing an identically worded counterpart to § 143.074, that is, § 143.024 of the Texas Agriculture Code, and stating that Texas courts have used the provision to hold or assume that livestock owners may be liable for *negligence* if their animals stray onto highways).

Given that *Rose* focused on § 143.074, the nature of the duty imposed thereunder, and its analysis of what was meant by "permit," we find the opinion quite persuasive and applicable here. And given the tenor of the questions asked by the trial court of Rodriguez' counsel before granting the directed verdict,[2] it also appears that the trial court utilized *Rose* in assessing whether a directed verdict was appropriate.

With this said, we turn to the arguments before us. The first we address is that insinuating the trial court erred in obligating Rodriguez to prove Sandhill engaged in something more than negligence. Given that the trial court applied the *Rose* definition of "permit" in making its decision and our adoption of that definition as controlling, we reject the proposition.

Next, we address the argument that livestock escaping its confines creates a presumption of negligence. As Rodriguez himself recognizes in his appellate brief, the Supreme Court disavowed that notion in *Beck v. Sheppard*, 566 S.W.2d 569 (Tex. 1978). *Id.* at 572 (stating that neither the ownership of the animal nor the ownership of the premises created a rebuttable presumption that the animal's presence on the road was due to the negligence of either). Animals may escape through no fault of their

---

[2] *E.g.*: "What evidence do you point to specifically that the defendant permitted the cattle to roam at large based on the definition that we have in the law which means to consent to expressly or formally, or to give leave?"

owners.  *Schumacher v. Caldwell*, 206 S.W.2d 243, 266-67 (Tex. 1947)    Thus, the fact of their escape is not alone evidence of misconduct on the part of their owner.  *Id.*; *Van Horne v. Harris,* No. 2-06-183-CV, 2007 Tex. App. LEXIS 2266, at *10 (Tex. App.—Fort Worth March 22, 2007, no pet.) (mem. op.) (stating that a violation does not occur solely because an owner's livestock runs at large); *Goode v. Bauer,* 109 S.W.3d 788, 792 (Tex. App.—Corpus Christi 2003, pet. denied) (stating that liability for the violation of livestock laws requires more than the presence of the animals in a forbidden place)

Lastly, we address whether there appeared evidence of record indicating that Sandhill permitted its cattle to run at large.  Rodriguez cites us to evidence that the cattle in question weighed approximately 500 pounds each, 80 head were placed on 60 acres, only one hot-wire surrounded the pasture, the wire had only one power source, only that portion of the wire near the trough held additional marking, and some of the steers were "bulling."[3]  Yet, absent is evidence that steers attempting to copulate with each other charge, wander, stampede, fall, fight, or the like. Nor is there evidence that such conduct was pervasive, happened near the wire, or was immune from impedance from a wire charged with electricity.  Similarly missing is evidence that a single strand of 14 gauge electrified wire (like that present here) was insufficient to generally hold cattle like those being pastured.  Indeed, the only evidence we found of record was that indicating a single strand of hot-wire was no less sufficient than a three, four, or five strand barbed wire fence.

Evidence that the cattle were not trained to stay within the confines of a hot-wire fence is also missing from the record, as is evidence that the cattle in question had

---

[3] According to the witness to whom the question was asked, "bulling" indicates effort by a steer to mount or breed with another steer.  One should note that a steer is incapable of breeding.

previously escaped from a hot-wire fence, that Sandhill knew the hot-wire fence was inoperative before leaving the cattle, that Sandhill failed to inspect the hot-wire fence to determine if it was operative, that Sandhill failed to periodically inspect the wire once the cattle were left, that Sandhill knew the cattle escaped and did nothing, that Sandhill left or allowed anyone to leave an opening in the hot-wire fence, or that there were too many head of cattle on the 60 acres. Nor do we find evidence from anyone familiar with cattle or their pasturing that can be read as criticizing the pasturing technique used here.

Simply put, nothing of record supports a reasonable inference that Sandhill breached § 143.074 of the Agriculture Code and permitted its cattle to run at large. Consequently, the trial court did not err in granting the directed verdict.

Accordingly, the judgment is affirmed.

Brian Quinn
Chief Justice

7