# IN THE SUPREME COURT OF TEXAS

═══════════

NO. 18-0953

═══════════

SHARY PRUSKI, PETITIONER,

v.

JOSHUA GARCIA, RESPONDENT

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═══════════════════════════════

**Argued November 7, 2019**

JUSTICE BLACKLOCK delivered the opinion of the Court.

From the time of the Republic of Texas, the default rule in this state has been that livestock owners may allow their animals to run at large.[1] Early on, Texas rejected altogether the English common-law duty to keep livestock confined. As this Court observed in 1893:

> Neither the courts nor the legislature of this state ha[d] ever recognized the rule of the common law of England which requires every man to restrain his cattle either by tethering or by inclosure. . . . It is the right of every owner of domestic animals in this State, not known to be diseased, vicious, or "breachy," to allow them to run at large . . . .

---

[1] *See Gibbs v. Jackson*, 990 S.W.2d 745, 747–48, 747 n.2 (Tex. 1999) (describing the history of the free-range rule in Texas law, including the Texas Congress's 1840 enactment of a statute under which "livestock owners could allow their animals to run at large").

*Clarendon Land, Inv. & Agency Co. v. McClelland*, 23 S.W. 576, 577–78 (Tex. 1893). Rejection of a livestock owner's English common-law duty to "restrain his cattle" by fencing or otherwise "rendered Texas 'free-range' as a general rule." *Gibbs*, 990 S.W.2d at 747. As recently as 1999, this Court reaffirmed free-range as Texas's default rule. *See id.*

Like all common-law rules, however, Texas's free-range rule yields to legislative enactments to the contrary. *Id.* at 748 (describing history of legislative departures from free-range rule). The 1876 Constitution specifically authorized the Legislature to deviate from the free-range rule by passing laws regulating fences and livestock. TEX. CONST. art. XVI, §§ 22, 23. This case involves the interaction of two such legislative deviations from the background rule. Both are currently found in Chapter 143 of the Agriculture Code. Under section 143.102, owners of certain livestock, including cattle, "may not knowingly permit the animal to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE § 143.102. Under section 143.074, in counties that have enacted stock laws, "a person may not permit any animal of the class mentioned in the [stock law] proclamation to run at large in the county." *Id*. § 143.074.

The question presented is whether, when a driver on a state highway collides with an escaped bull in a county with a stock law, the standard of tort liability for the bull's owner comes from section 143.102 or from section 143.074. The difference can matter a great deal. Section 143.102 is violated only when the livestock owner *knowingly* permits the animal to run at large, while a violation of section 143.074 does not require the livestock owner's "knowing" mental state. The court of appeals applied section 143.074. It held that the plaintiff driver could recover against the defendant livestock owner for an accident on a state highway without showing the livestock owner *knowingly* permitted the bull to roam at large. This was error. The Legislature

has decided that section 143.102, including its heightened mental-state component, "prevails to the extent of any conflict with another provision of this chapter," which includes the stock law statutes. TEX. AGRIC. CODE § 143.107. When cars collide with livestock on state highways in counties with stock laws, the differing standards of livestock-owner liability imposed by section 143.102 and section 143.074 cannot both apply. Section 143.102 requires a "knowing" mental state as a prerequisite to livestock-owner liability for highway accidents. Section 143.074 does not. That is a conflict. Following the Legislature's direction on how to resolve the conflict, we hold that section 143.102 provided the exclusive standard for the livestock owner's liability because the accident occurred on a state highway.

The plaintiff does not contend he can demonstrate the defendant violated section 143.102's liability standard. We therefore reverse in part the judgment of the court of appeals and reinstate summary judgment for the defendant on all claims.

## I. Factual and Procedural Background

On the evening of December 5, 2015, Joshua Garcia was driving his pickup truck on State Highway 123 in Wilson County. A bull owned by Shary Pruski escaped its fenced enclosure and wandered onto Highway 123. Garcia's truck struck the bull, killing the bull, wrecking Garcia's truck, and injuring Garcia. After the accident, it was discovered that a latch to the gate of the fenced pasture had broken, allowing the bull to escape and wander onto the highway.

Garcia sued Pruski. He alleged Pruski negligently failed to keep the bull within a fenced area on his property and negligently failed to prevent the bull from wandering onto a state highway, in violation of chapter 143 of the Agriculture Code. The trial court granted summary judgment for Pruski on all claims. On appeal, Garcia did not contend Pruski owed him a common-law duty

3

to keep his cattle fenced.  *See Gibbs*, 990 S.W.2d at 747–50 (holding that no such duty exists at common law and that any liability for failure to fence livestock arises from statute).  Instead, Garcia argued that Pruski could be liable in tort for violation of statutory duties arising from two separate sections of chapter 143.  The first is section 143.102.  As described above, section 143.102 provides that a livestock owner "may not *knowingly permit* [a horse, mule, donkey, cow, bull, steer, hog, sheep, or goat] to traverse or roam at large, unattended, on the right-of-way of a highway."  TEX. AGRIC. CODE § 143.102 (emphasis added).  That rule applies on all United States and state highways in Texas, *id.* § 143.101, and violation of it is a Class C Misdemeanor.  *Id.* § 143.108.  Further, sections 143.101 through 143.108 (subchapter E) "prevail[] to the extent of any conflict with another provision of this chapter."  *Id.* § 143.107.

The second source of Pruski's alleged tort duty is section 143.074, which is found in subchapter D of chapter 143 and is part of the legislative scheme governing county stock laws. Certain counties may, through countywide election, adopt a local stock law "for the purpose of determining if cattle are to be permitted to run at large in the county or area."  *Id.* § 143.071(a). Subchapter D imposes requirements for such an election.  *Id.* § 143.071–074.  If the stock law proposal passes, the subchapter is adopted, and "a person *may not permit* any animal of the class mentioned in the proclamation to run at large in the county or area in which the election was held." *Id.* § 143.074(a) (emphasis added).  Further, a person who "*knowingly permits* a head of cattle or a domestic turkey to run at large in a county or area that has adopted" the stock law violates the local stock law and commits a Class C misdemeanor.  *Id.* § 143.082 (emphasis added).  These rules applied in Wilson County, which had adopted a stock law.

4

The court of appeals affirmed summary judgment on all claims related to Pruski's alleged violation of section 143.102, the highway statute. 563 S.W.3d 333, 344 (Tex. App.—San Antonio 2018, pet. granted). The court held that Garcia failed to raise a genuine issue of material fact on whether Pruski "knowingly" permitted his bull to roam at large in violation of section 143.102. *Id.* In this Court, Garcia does not challenge this aspect of the court of appeals' decision. However, the court of appeals also decided Garcia *had* raised a genuine fact issue concerning whether Pruski violated the stock-law duty. That duty, the court held, flows from section 143.074 and "may be breached by evidence showing the person *was at fault in allowing* any mentioned animal to run at large." *Id.* (emphasis added).

The court of appeals rejected Pruski's argument that the highway statute and the stock law statute impose conflicting duties. *Id.* at 339–41. The court concluded that "section 143.102 operates independently from, and in addition to, chapter 143's stock law provisions." *Id.* at 341. It further reasoned that it would be absurd to interpret the statutes such that "the statutory duty a bull-owner owes would change based on where the bull was standing at the time of the accident." *Id.* In the court of appeals' view, section 143.102's "knowingly" standard applies on highways throughout the state, but counties are free within their borders to lower the threshold for livestock-owner liability, even on U.S. and state highways, by passing a stock law.

## II. Analysis

### A. Standard of Review

The disposition of this case turns on the meaning of chapter 143 of the Agriculture Code, which is a legal question reviewed de novo. *See, e.g.*, *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). We must apply statutes "as written" and "refrain from rewriting

text that lawmakers chose." *Id.* at 443. "The text is the alpha and the omega of the interpretive process," *BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017), and the statute's words and phrases must "be read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code § 311.011. The Legislature's "voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, 'the judge's inquiry is at an end.'" *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013) (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)).

### B.     Penal Statutes as a Source of Civil-Liability Standards

Both the highway statute and the stock law statute impose legal duties on livestock owners. The Legislature stated none of these duties as civil liability standards, however. Both statutes impose *criminal* penalties, but neither purports to authorize civil lawsuits or says anything at all about tort liability. It is generally recognized that courts asked to impose civil liability "may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation." Restatement (Second) of Torts § 286 (Am. Law Inst. 1965). But "[w]e have long recognized that the mere fact that the Legislature adopts a criminal statute does not mean this court must accept it as a standard for civil liability." *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). This is because "not every penal statute creates an appropriate standard of care for civil liability purposes; therefore, a court is not required to adopt the penal statute's standard." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). "As the power of adopting or rejecting standards rests with the civil courts, we may accept or reject the criminal

6

statute or use such part thereof as may be deemed appropriate for our purposes." *Howsley v. Gilliam*, 517 S.W.2d 531, 533 (Tex. 1975).

Neither party addresses whether the statutes by which Garcia seeks to impose civil liability on Pruski "create an appropriate standard of care for civil liability purposes." *Smith*, 940 S.W.2d at 607. Both the parties and the court of appeals assumed that a violation of either statute gives rise to a tort action. Multiple courts of appeal have used these two provisions of chapter 143 to hold livestock owners civilly liable if their animals stray onto highways or areas covered by a local stock law. *See, e.g.*, *Weaver v. Brink*, 613 S.W.2d 581, 583–84 (Tex. App.—Waco 1981, writ ref'd n.r.e.); *Hanna v. Wright*, 504 S.W.2d 779, 781–83 (Tex. App.—Tyler 1974, no writ). In *Gibbs v. Jackson*, we observed that "Texas courts have relied upon these two statutes, or their predecessors, to hold or assume that livestock owners may be liable for negligence if their animals stray onto highways." *Gibbs*, 990 S.W.2d at 749. *Gibbs* did not "accept or reject the criminal statutes" as a source of civil liability or make any holding about the contours of the civil-liability rules that arise from these two statutes. For present purposes, we will assume, as the parties do, that both section 143.102 and section 143.074 "create an appropriate standard of care for civil liability purposes" and that civil liability may therefore be imposed for their violation.

### C. The Conflict between the Standards

Pruski's primary argument is that the standard of civil liability for highway accidents that arises from section 143.102 conflicts with the standard of liability imposed on him by the court of appeals under the stock law statute. In order to determine whether the two standards conflict, we first attempt to identify what the two standards are.

The parties do not dispute the contours of civil liability under section 143.102. The statute provides that a livestock owner "may not *knowingly permit* [a horse, mule, donkey, cow, bull, steer, hog, sheep, or goat] to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE § 143.102 (emphasis added). In order for there to be any liability under this provision, whether civil or criminal, the defendant must "knowingly permit" the animal to roam at large. Although not defined in the agriculture code, in the penal code,

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE § 6.03; *see also*, *Knowingly*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("the actor engaged in prohibited conduct with the knowledge that the social harm that the law was designed to prevent was practically certain to result"). Thus, section 143.102 is violated if the livestock owner permits the animal to traverse or roam at large, unattended, on the right-of-way of a highway and does so with the knowing mental state traditionally applied in criminal law.

The parties disagree on the standard of civil liability under the stock law statute. Section 143.074, on which Garcia relies, provides that once a stock law is adopted "a person *may not permit* any animal of the class mentioned in the proclamation to run at large in the county or area in which the election was held." TEX. AGRIC. CODE § 143.074(a) (emphasis added). Later, the stock law statute also provides that a person who "*knowingly permits* a head of cattle or a domestic turkey to run at large in a county or area that has adopted" the stock law violates the local stock law and commits a Class C misdemeanor. *Id.* § 143.082 (emphasis added). Thus, the stock law statute states the duty of a cattle owner like Pruski in two different ways—one without the

8

"knowingly" mental state and one with it. The parties assume, and therefore so will we, that civil liability arises from a violation of section 143.074, which does not contain the "knowingly" modifier.

The parties disagree about what it means for a livestock owner to "permit" his animals to "run at large." The word "permit" usually connotes awareness or assent, as opposed to mere oversight or negligence. *See, e.g.*, *Permit*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To consent to formally; to allow (something) to happen"); *Permit*, Oxford American English Dictionary and Thesaurus (2009) ("officially allow someone to do something"). In *Rose v. Ben C. Hebert Heirs*, the Ninth Court of Appeals interpreted the stock law statute's use of "permit" to impose a liability standard more demanding than simple negligence. 305 S.W.3d 874, 880–81 (Tex. App.—Beaumont 2010, no pet.) (interpreting "permit" as "to consent to expressly or formally," or "to give leave")*; see also Dearbonne v. Courville* No. 09-16-00440-CV, 2018 WL 4354310, at *8 (Tex. App.—Beaumont Sept. 13, 2018, no pet.) (applying same understanding of "permit"). Although it cited the Ninth Court's understanding of "permit" favorably, the Seventh Court suggested that a failure to exercise reasonable care could be enough to support civil liability under the stock law statute. *Rodriguez v. Sandhill Cattle Co., L.P.*, 427 S.W.3d 507, 510 (Tex. App.—Amarillo 2014, no pet.). However "permit" is understood, it bears noting that the duty imposed by section 143.074 is not to prevent all escapes of fenced animals. Rather, the duty is to not "permit" animals "to roam or run at large." Historically, to roam or run at large has meant more than temporary escape. Instead, it refers to animals allowed as a matter of course to graze and move about freely in an unconfined area. *See, e.g.*, *Clarendon*, 23 S.W. at 577 (explaining that it is the livestock owner's right in Texas to permit his animals to run at large "either upon the

9

open range" or on someone else's unenclosed land); *Gunter v. Cobb*, 17 S.W. 848, 850 (Tex. 1891) (holding that the cattle in question were "running at large in a range" and that "[t]he purpose of the statute was to avoid such inconvenience and expense as would be incurred in gathering and taking care of stock scattered and accustomed to run free").

We need not identify with precision the standard of civil liability arising from section 143.074. The parties agree it does not involve the "knowing" mental state required for a violation of section 143.102's highway rule. Thus, for collisions between drivers and livestock on state highways in counties with stock laws, there are two potential rules of civil liability for the livestock owner. Under one rule, the owner can only be liable if he acted knowingly. Under the other rule, the owner can be liable if he did not act knowingly, so long as he "permit[ted]" the animal "to run at large." To state the two rules is to state the conflict between them. Both cannot be the rule in the same lawsuit.

The court of appeals focused only on whether the two statutes are irreconcilable "facially." 563 S.W.3d at 340. True, the statutes do not conflict on their face. The court of appeals correctly observed that "a person may violate both" and that section 143.102 can "operate independently from, and in addition to, chapter 143's stock law provision." *Id.* at 341. But Pruski's argument is not that the statutes themselves conflict facially such that they can never coexist. His argument is that, when the statutes are converted into rules of civil liability, they conflict *as applied to his case*. He is right. When a driver collides with an escaped bull on a state highway in a county with a stock law, the two statutes give rise to two irreconcilable standards of civil liability for the livestock owner. The Legislature has decided that section 143.102's highway liability rules, including its "knowingly" mental state, "prevail[] to the extent of *any* conflict with another provision of this

10

chapter," which includes the stock law statutes. TEX. AGRIC. CODE § 143.107 (emphasis added). Section 143.102 provides the only liability standard to which Pruski may be held for this accident. If Garcia cannot show Pruski "knowingly permit[ted]" the bull to "traverse or roam at large . . . on the right-of-way of a highway," he cannot impose civil liability on Pruski for the accident.

Garcia argues that a county may expand protections for highway drivers without conflicting with the baseline protections contained in state law. It is true that, if section 143.102 merely protected drivers from ranchers who knowingly permit their bulls to roam at large, then stock laws affording even greater protection to drivers might not conflict with it. *Cf., e.g.*, *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986) (explaining that states are free to provide additional rights and protections that are not afforded under federal law). But section 143.102 also protects ranchers, by shielding them from liability for highway accidents unless the plaintiff can prove knowing permission. A local stock law that has the effect of denying landowners this heightened liability protection plainly conflicts with the statute affording the protection.

The history of section 143.102 and its statutory predecessors confirms this conclusion.[2] In 1935, the Legislature enacted the original predecessor to section 143.102, which prohibited livestock owners from permitting their animals to traverse or roam unattended on the right-of-way of a highway that had fences on both sides. *See* Act of May 8, 1935, 44th Leg., R.S., ch. 186, § 1, 1935 Tex. Gen. Laws 467, 467. In 1959, the Legislature limited this prohibition to "knowingly" permitting animals to roam at large and expanded its scope to all U.S. highways and state

---

[2] "[T]his is the history of the legislation, not legislative history." *Ojo v. Farmers Group, Inc.*, 356 S.W.3d 421, 445 n.31 (Tex. 2011) (Willett, J., concurring in part). "Variations in enacted text can lend helpful interpretive context, and nobody should quarrel with examining how an enacted statute changes over time. Such variations lend helpful interpretive context as they boast the imprimatur of the Legislature as a whole." *Id.* (citing *Entergy*, 282 S.W.3d at 443).

11

highways, whether the adjacent land was fenced or not. *See* Act of May 12, 1959, 56th Leg., R.S., ch. 374, § 1, 1959 Tex. Gen. Laws 835, 835. Relative to the 1935 statute that preceded it, the 1959 amendment was a trade-off. It provided ranchers the protection of the "knowingly" standard, but it also expanded their liability to include unfenced highways.

Even more notably, the 1959 amendment also added what is now section 143.103, which addresses the opposite situation: when liability will attach for *drivers* who "strike[], kill[], injure[], or damage[] an unattended animal running at large on a highway." TEX. AGRIC. CODE § 143.103. Section 143.103 provides that such drivers are not liable "except on a finding of: (1) gross negligence in the operation of the vehicle; or (2) wilful intent to strike, kill, injure, or damage the animal." *Id.* This driver-liability provision was added by the same bill by which the Legislature added the "knowingly" requirement to the livestock-owner-liability provision that would become section 143.102. *See* Act of May 12, 1959, 56th Leg., R.S., ch. 374, §§ 1–2, 1959 Tex. Gen. Laws 835, 835. Thus, section 143.102 was part of yet another a legislative trade-off. The Legislature decided that in collisions between livestock and cars on U.S. and state highways, neither side should be liable absent a heightened culpable mental state. Imposing stock-law liability on livestock owners for highway accidents, as Garcia urges, would upset this legislative balance. Livestock owners in counties with stock laws could be sued by highway drivers under the stock law's more expansive liability standard. But the same livestock owner would be barred from recovering against drivers without showing gross negligence or willful intent. In counties without stock laws, livestock owners would get both the benefits and the burdens of the legislative compromise for highway accidents. In counties with stock laws, livestock owners would get none of the benefits and all of the burdens. Without question, such a legal landscape would conflict

with the legislative balance struck by sections 143.102 and 143.103 for highway accidents. The Legislature preserved that balance by mandating that the specific provisions for livestock-driver accidents on highways "prevail[] to the extent of any conflict with another provision of this chapter," including local stock laws. TEX. AGRIC. CODE § 143.107.

Finally, the court of appeals reasoned, and Garcia argues, that it would be "absurd" to interpret chapter 143 such that "the statutory duty a bull owner owes would change based on where the bull was standing at the time of the accident." 563 S.W.3d at 341. But in counties without stock laws, the duty owed by a bull owner *always* depends on where the bull is standing: There is a duty not to knowingly permit the bull to roam on a highway right-of-way, and there is no duty when the bull is anywhere else. *See Gibbs*, 990 S.W.2d at 750 (declining to impose any general duty to restrain livestock in counties without stock laws). In addition, the corresponding duty owed by a driver to the livestock owner varies based on where the bull is standing: Section 143.102 requires a heightened culpable mental state for driver liability on highways, but if the bull is not on a highway, the driver does not have that protection. Far from absurd, rules conditioning a livestock owner's legal duty on his animal's location enjoy a provenance far more venerable than most modern statutes:

> Under the English common law inherited by the United States, an owner of a domestic animal had a duty to prevent the animal from trespassing onto a neighbor's land, but had no duty to prevent the animal from straying onto a public roadway, unless the owner had prior knowledge that the animal had vicious propensities.

*Gibbs*, 990 S.W.2d at 747 & n.1 (citing *Cox v. Burbidge*, 13 C.B. (N.S.) 430, 438–39 (Eng. C.P. 1863); *Heath's Garage, Ltd. v. Hodges*, [1916] 2 K.B. 370, 375–84 (Eng. C.A.); SALMOND, SALMOND ON THE LAW OF TORTS § 135, at 479 (W.T.S. Stallybrass, 7th ed. 1928)). Thus, under

English common law, the landowner's duty depended entirely on the animal's location. Indeed, the English duty was *reduced* when the animal was on a public roadway, just as Pruski contends his duty is reduced on a U.S. or state highway. Neither the Justices of the King's Bench nor the Texas Legislature seem to have thought this arrangement absurd. Nor do we.

### III.    Conclusion

For the foregoing reasons, section 143.102 of the Agriculture Code provides the only potentially applicable standard of civil liability for Garcia's claims against Pruski. The court of appeals ruled that Garcia failed to raise a genuine issue of material fact as to whether Pruski violated that standard, and Garcia does not challenge that decision in this Court. The judgment of the court of appeals is reversed in part, and summary judgment for the defendant is reinstated on all claims.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** January 31, 2020

14