Opinion by: Patricia O. Alvarez, Justice
This is a personal injury case arising out of an automobile accident involving a bull that escaped its enclosure and wandered onto the highway where appellant Joshua Garcia was driving. Garcia sued Pruski, alleging he was responsible for the bull wandering onto the highway. After the trial court granted appellee Shary Pruski's traditional and no-evidence motion for summary judgment and rendered a final judgment, Garcia timely appealed. We affirm the judgment in part, reverse the judgment in part, and remand the case for further proceedings.
PROCEDURAL BACKGROUND
Garcia was injured when the vehicle he was driving collided with a bull on State Highway 123 in Wilson County. Garcia filed suit against Pruski, who owned the bull and the land from which the bull escaped, alleging he was negligent in various ways. Pruski filed a traditional and no-evidence motion for summary judgment. Both the no-evidence grounds and the traditional grounds challenged the elements of Garcia's negligence claims: the existence of a legal duty, breach, and proximate cause. Pruski filed a supplement to his summary judgment motion, and produced additional evidence in support thereof. After Garcia filed a response, the trial court signed an order granting Pruski's motion for summary judgment. The trial court's order stated it was a final judgment as to all claims and parties. Garcia timely perfected this appeal.
STANDARD OF REVIEW
"We review the grant of [a] summary judgment de novo." Katy Venture, Ltd. v. Cremona Bistro Corp. , 469 S.W.3d 160, 163 (Tex. 2015). To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c) ; accord Katy Venture , 469 S.W.3d at 163. A trial court must grant a no-evidence motion for summary judgment unless the nonmovant raises a genuine issue of material fact on each challenged element of the nonmovant's claims. KCM Fin. LLC v. Bradshaw , 457 S.W.3d 70, 79 (Tex. 2015). We take as true all evidence favorable to the nonmovant, resolve *337 all conflicts in the evidence in the nonmovant's favor, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. Katy Venture , 469 S.W.3d at 163.
NEGLIGENCE
Garcia argues the trial court erred by granting Pruski's motion for summary judgment because he produced some evidence raising a genuine issue of material fact as to the challenged elements of his negligence claims against Pruski. The essential elements of a negligence claim are the existence of a legal duty, a breach of that duty, and damages proximately caused by the defendant's breach. Crosstex N. Tex. Pipeline, L.P. v. Gardiner , 505 S.W.3d 580, 607 (Tex. 2016). Where, as here, the trial court does not specify the grounds on which it granted a summary judgment motion, "we must affirm if any of the grounds asserted in the motion are meritorious." Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen , 525 S.W.3d 671, 680 (Tex. 2017). In light of our standard of review, we must therefore determine whether Garcia produced evidence sufficient to raise a genuine issue of material fact with regard to the challenged elements of his negligence claims.
A. Garcia's Negligence Claims
Before analyzing the elements of Garcia's negligence claims, we first must ascertain the negligence claims raised by Garcia's pleadings. "Pleadings must give fair notice of the nature and basic issues so the opposing party can prepare a defense." Bos v. Smith , No. 16-0341, 556 S.W.3d 293, 305-06, 2018 WL 2749714, at *9 (Tex. June 8, 2018) (citing TEX. R. CIV. P. 47(a) ; Horizon/CMS Healthcare Corp. v. Auld , 34 S.W.3d 887, 896-97 (Tex. 2000) ). When, as here, a defendant does not file special exceptions, we must liberally construe the pleadings. See ids="11167621" index="9" url="https://cite.case.law/sw3d/34/887/#p896">id. "When a pleader provides both general and specific allegations, the specific controls, and the pleader cannot rely on the general allegations to expand the scope of the claim." Id.
In his first amended petition, his live pleading, Garcia alleged Pruski was negligent by failing to properly restrain and restrict the bull within a fenced area on his property, by failing to prevent the bull from gaining access to and wandering onto the state highway, and for violating chapter 143 of the Texas Agriculture Code. Garcia also alleged that Pruski "owed him a legal duty to prevent [the bull] from straying onto State Highway 123 and that [Pruski] clearly breached such duty." He further alleged that "[e]ach and all of the above stated acts and/or omissions constitute negligence." Liberally construed, Garcia's pleadings seek the imposition of liability on Pruski for negligence under the common law and on statutory provisions. See ids="11167621" index="11" url="https://cite.case.law/sw3d/34/887/#p896">id.
B. Existence of a Legal Duty
The first element of a negligence claim, and the threshold issue, is the existence of a legal duty. See Crosstex N. Tex. Pipeline, L.P. , 505 S.W.3d at 607 ; Peek v. Equip. Servs., Inc. , 906 S.W.2d 529, 534 (Tex. App.-San Antonio 1995, no writ). In claims against landowners for allowing certain classes of animals to roam at large in Texas, there are two possible sources of a legal duty: the common law or a statute. See Gibbs v. Jackson , 990 S.W.2d 745, 749-50 (Tex. 1999) (acknowledging two possible sources of liability, but holding there is no common-law duty); Goode v. Bauer , 109 S.W.3d 788, 791-92 (Tex. App.-Corpus Christi 2003, pet. denied) (acknowledging a statutory duty under chapter 143).
C. No Common Law Duty
On appeal, Garcia does not contend that Pruski owed a common law duty to *338 control or restrict the movement of his bull. See Gibbs , 990 S.W.2d at 750 (explaining that Texas common law generally does not prohibit the at large roaming of cattle). We therefore must affirm the trial court's judgment as to Garcia's negligence claims that are based on a breach of common law duty. See ids="11625673" index="17" url="https://cite.case.law/sw2d/990/745/#p749">id. ; see also In re R.S.D. , 446 S.W.3d 816, 822 (Tex. App.-San Antonio 2014, no pet.) (affirming unchallenged parts of an appealed judgment). We next determine whether Garcia produced sufficient evidence to show Pruski owed a duty under a statute. See Gibbs , 990 S.W.2d at 749-50. The only statutory violation Garcia alleged was of chapter 143 of the Texas Agriculture Code.
D. Statutory Duty Under Chapter 143 of the Texas Agriculture Code
Garcia argues Pruski had a statutory duty under two provisions of chapter 143 of the Texas Agriculture Code: section 143.071 and section 143.102. Pruski argues he owed Garcia a duty only under section 143.102. We therefore must determine whether Pruski owed Garcia a legal duty under chapter 143 and, if so, we must determine the scope of the duty owed.
1. Duty Under Section 143.102
Pruski acknowledges on appeal, as he did in the trial court, that the Legislature has created a statutory exception to the general rule that cattle in Texas may roam at large. TEX. AGRIC. CODE ANN . § 143.102 (West 2004) ; accord Gibbs , 990 S.W.2d at 749-50. Pruski does not dispute that he owed a statutory duty not to knowingly permit his bull to traverse or roam at large, unattended, on the right-of-way of a highway. See TEX. AGRIC. CODE ANN . § 143.102.[1] Section 143.102 imposes a statutory duty on "[a] person who owns ... a ... bull." Id. In his summary judgment response, Garcia produced evidence showing Pruski owned the bull that wandered onto State Highway 123, owned the property on which the bull was confined, and had confined the bull using a barbed wire fence. Thus, we hold Garcia produced some evidence raising a genuine issue of material fact that Pruski had a statutory duty under section 143.102 not to "knowingly permit the [bull] to traverse or roam at large, unattended, on the right-of-way of a highway." See id. ; Goode , 109 S.W.3d at 791-92.
2. Duty Under the Stock Law Provisions of Chapter 143
The parties primarily dispute whether Pruski also owed Garcia a statutory duty under the stock law provisions of chapter 143. For clarity, the "stock law provisions" refer to the provisions of chapter 143, subchapter D, that authorize a county to adopt a stock law and opt into additional statutory regulations regarding certain classes of animals roaming at large. See TEX. AGRIC. CODE ANN . § 143.071 -.082 (West 2004). If a county adopts a stock law, then "a person may not permit any animal of the class mentioned in the proclamation to run at large in the county or area in which the election was held." Id. § 143.074.
Garcia argues the statutory duty imposed by the stock law provisions apply in addition to the duty imposed by section 143.102. Pruski argues the statutory duty imposed by the stock law provisions does not apply for two reasons: (1) Garcia did not properly prove that Wilson County actually adopted a stock law; and (2) the stock law provisions conflict with *339 section 143.102 and chapter 143 provides that section 143.102 prevails in case of a conflict. See id. § 143.107.
3. Whether Garcia Proved that Wilson County Adopted a Stock Law
In his summary judgment response, Garcia produced a 2010 Proclamation by the County Judge of Wilson County. Pruski asserts in a parenthetical in his appellee's brief, and without argument or explanation, that Garcia did not "properly prove[ ] up the [2010] Proclamation as sufficient summary judgment evidence." "Where a party has used a document made by a third party in such a way as amounts to an approval of its contents, such statement may be received against him as an admission by adoption." See Tex. Reciprocal Ins. Ass'n v. Stadler , 140 Tex. 96, 166 S.W.2d 121, 125 (Tex. 1942). Pruski attached the 2010 Proclamation to his motion for summary judgment and based his motion on the "exhibits made part of this motion." Pruski also did not object to the trial court considering the 2010 Proclamation that Garcia produced with his summary judgment response. See Doncaster v. Hernaiz , 161 S.W.3d 594, 602 (Tex. App.-San Antonio 2005, no pet.) (requiring an objection to summary judgment evidence and a ruling on that objection). We hold the 2010 Proclamation is part of the summary judgment record that we must consider.
The 2010 Proclamation contains the County Judge's order showing the results of the election to adopt a local stock law prohibiting cattle from running at large throughout Wilson County. This order "is prima facie evidence that the requirements of this chapter have been complied with in relation to presenting the petition, ordering the election by the commissioners court, giving notice, holding the election, counting and returning votes, and declaring the results." See TEX. AGRIC. CODE ANN . § 143.073(c). Because the 2010 Proclamation is prima facie evidence that the stock law provisions of chapter 143 apply in Wilson County, we proceed to determine whether the stock law provisions of chapter 143 conflict with section 143.102.
4. Whether the Stock Law Provisions Conflict with Section 143.102
The parties' arguments regarding whether the stock law provisions conflict with section 143.102 require that we construe the various provisions of chapter 143 to determine the scope of the applicable statutory duty or duties. When construing a statute, we must determine and give effect to the Legislature's intent. Youngkin v. Hines , 546 S.W.3d 675, 680 (Tex. 2018). The language of a statute, when viewing "the act as a whole rather than isolated portions of it," is the surest guide to determining the Legislature's intent. Id. Generally, we construe a statute's words according to their plain and common meaning. Id. But we will not construe statutory words in accordance with their plain and common meaning when doing so would lead to absurd results or when a different meaning is apparent from context. Id.
5. General Structure of Chapter 143
Chapter 143 of the Texas Agriculture Code governs fences and provides range restrictions for persons who own or control certain classes of animals. See TEX. AGRIC. CODE ANN . §§ 143.001 -.123 (West 2004 & Supp. 2017). With regard to animals roaming at large, subchapter E of chapter 143 contains provisions regarding animals throughout the state roaming at large, specifically, on highways. See, e.g. , id. §§ 143.101-.108. Subchapter D of chapter 143, which contains the stock law provisions, authorize the freeholders of a county or an area within a county to adopt a local option stock law that prohibits persons from allowing animals to run at large *340 throughout a county or area of a county. See, e.g. , id. §§ 143.071-.082. Other subchapters of chapter 143 contain similar provisions authorizing local options regarding certain classes of animals roaming at large. See id. §§ 143.021-.056.
6. Subchapter D-The Stock Law Provisions
The stock law provides, "In accordance with this section, the freeholders of a county or an area within a county may petition commissioners court to conduct an election for the purpose of determining if cattle are to be permitted to run at large in the county or area." Id. § 143.071(a). It further provides, "If a majority of the votes cast in an election are for the proposition, this subchapter is adopted and, after the 30th day following the date on which the proclamation of results is issued, a person may not permit any animal of the class mentioned in the proclamation to run at large in the county or area in which the election was held." Id. § 143.074(a). In addition to this statutory duty, the stock law provisions establish a criminal penalty for "knowingly permit[ting] a head of cattle or a domestic turkey to run at large in a county or area that has adopted this subchapter." Id. § 143.082. Although section 143.074(a) provides a criminal offense for "knowingly" permitting cattle to run at large, section 143.071 does not include a "knowingly" requirement. Id. § 143.071 ; see Goode , 109 S.W.3d at 791-92.
7. Section 143.102 & Subchapter E
Section 143.102, which is contained in subchapter E, provides, "A person who owns or has responsibility for the control of a ... bull ... may not knowingly permit the animal to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE ANN . § 143.102. Subchapter E also provides limited immunity from liability for drivers who strike unattended animals running at large on a highway, provides that the subchapter does not prevent the movement of livestock from location to location, allows enforcement of the subchapter without the use of a written warrant, and provides a criminal penalty. See id. §§ 143.103-.108. Most significantly for our analysis, subchapter E further provides, "This subchapter prevails to the extent of any conflict with another provision of this chapter." See id. § 143.107.
8. The Stock Law Provisions & Section 143.102 Do Not Conflict
The stock law provisions and section 143.102, when their meanings are ascertained from a plain language reading of their statutory terms, do not conflict. Section 143.102 prohibits individuals from knowingly permitting an animal to traverse or roam at large, unattended, on the right-of-way of a highway. Id. § 143.102. The stock law provisions authorize counties to adopt a stock law and opt into an additional set of statutory regulations. No part of the stock law provisions authorize individuals to knowingly permit an animal to traverse or roam at large, unattended, on the right-of-way of a highway. They also do not allow a county to authorize individuals to knowingly permit an animal to traverse or roam at large, unattended, on the right-of-way of a highway. See id. §§ 143.071-.082. Facially, there is simply no conflict between the stock law provisions and section 143.102.
Instead, the stock law provisions and section 143.102, construed together within the larger statutory framework of chapter 143, can be harmonized. Generally, under Texas law, landowners may allow their cattle to roam at large. See Gibbs , 990 S.W.2d at 747 ; Fennell v. Seguin St. Ry. Co. , 70 Tex. 670, 8 S.W. 486, 486-87 (1888). The stock law provisions authorize a county to adopt a local stock law and prohibit *341 specified classes of animals from roaming at large anywhere within the county. See TEX. AGRIC. CODE ANN . § 143.071 -.082. Regardless of whether a county has adopted a stock law, however, section 143.102 prohibits individuals from knowingly permitting certain animals to traverse or roam at large, unattended, on the right-of-way of a highway. See id. § 143.102 ; Goode , 109 S.W.3d at 791-92. A person may violate both 143.102 and the stock law provisions, as section 143.102 applies only to highways and the stock law provisions apply throughout the entire territory of the county, which can include highways within the county. See TEX. AGRIC. CODE ANN . §§ 143.102, 143.071. Construed in light of chapter 143 as a whole, section 143.102 operates independently from, and in addition to, chapter 143's stock law provisions.
Furthermore, we must reject Pruski's position because it would have absurd results. See Youngkin , 546 S.W.3d at 680. Under Pruski's construction, a person in a county that has adopted a stock law would violate section 143.072 by negligently permitting a bull to roam at large anywhere in the county. But if the roaming bull were to step onto the right-of-way of any highway in the county, the person would be relieved of his statutory duty under section 143.072. According to Pruski's position, the statutory duty that such a bull-owner owes would change based on where the bull was standing at the time of the accident. We do not find Pruski's position persuasive.
9. Harlow v. Hayes
In support of his position, Pruski cites Harlow v. Hayes , No. 07-95-0210-CV, 1996 WL 467464 (Tex. App.-Amarillo Aug. 16, 1996, no writ) (per curiam) (not designated for publication). In Harlow , the court of appeals asserted in a footnote, without explanation or authority, that the relevant county's stock law conflicted with section 143.102. Id. at *2 n.3. Although Harlow has no precedential weight, we may consider the case for any persuasive value it may have. However, the conclusory nature of the per curiam opinion, and the absence of an analysis of the statute as a whole, leaves us nothing to be persuaded by. Moreover, the Harlow court asserted there is a conflict between section 143.102 and the text of the county's stock law; but section 143.107's plain language requires there to be a conflict between a provision of subchapter E and "another provision" of chapter 143. See index="53" url="https://cite.case.law/citations/?q=1996%20WL%20467464">id. at *2 ; see also TEX. AGRIC. CODE ANN . § 143.107. Therefore, we are unpersuaded by Harlow that we are incorrect in our plain-language construction of the stock law provisions and section 143.102.
10. Conclusion Regarding a Duty Under the Stock Law Provisions
Based on the foregoing, we conclude that section 143.102 does not conflict with chapter 143's stock law provisions and hold that Garcia produced some evidence showing Pruski owed a duty under the stock law provisions of chapter 143, in addition to the duty imposed by section 143.102. We must next determine whether Garcia produced any evidence showing Pruski breached his statutory duty under section 143.102 and the stock law provisions.
E. Breach of Duty
To show that Pruski violated both section 143.102 and the stock law provisions, Garcia relies on the same evidence. In addition to the 2010 Proclamation, the relevant evidence that Garcia attached to his summary judgment response included Pruski's sworn responses to Garcia's interrogatories and excerpts from the depositions of Pruski; responding officer, State Trooper Jack Johnson, II; Pruski's nephew Clint Garza; and Pruski's brothers-in-law Lloyd Pruski and Rick Scheffler.
*342 1. Summary of the Relevant Summary Judgment Evidence
Pruski swore in his verified responses to Garcia's interrogatories that he kept the bull in question on his property located along State Highway 123. Pruski swore his property is 37 acres, and that he has a six-strand barbed wire fence around the property. He stated that he received a call informing him that his bull might have been hit on the road. Pruski further swore the bull was killed in the accident, and that he found the bull "in the bar ditch" south of a gate on his property. Pruski stated he "th[ought] the bull got spooked and broke the latch," and that the distance between the field/pasture where the bull in question had escaped from and State Highway 123 was approximately "30 feet to the highway and about 30 yards south of the gate."
Pruski testified during his deposition that he owned the bull involved in the collision. He stated the bull was five years old and weighed about 2,000 pounds. Pruski further stated the bull had escaped by breaking the latch on the gate. He stated he had a lock on the gate, but the gate was not locked when the bull broke the latch. He also testified he did not have a cattle guard on his property, and the purpose of the cattle guard is to prevent cattle from escaping. Pruski stated that if the bull would not have escaped, Garcia would not have been injured. Pruski also testified he never had a head of cattle escape from the property except for once, eight years prior, when the gate was left open. Pruski testified that, on that occasion, a head of cattle wandered onto State Highway 123 and was struck and killed by a truck.
Garza testified during his deposition that he went with Pruski to look at the gate after the accident. Garza testified Pruski "always keeps it locks [sic] because he's paranoid about cows getting on the roadway." According to Garza, Pruski told him that instead of keeping the gate locked on the date of the accident and giving his contractor a key, Pruski used a latch.
Pruski's brother-in-law Lloyd testified during his deposition that Pruski usually left the gate locked, but on the day of the accident, Pruski had left the gate unlocked to allow a contractor onto the property. Lloyd also testified that Pruski had left a latch on the gate on the day of the accident. He stated he went back to Pruski's property possibly two or three days after the accident and the gate was locked. Lloyd explained that there is a chain on the gate, and the chain can be held together with either a lock or a latch.
Another one of Pruski's brothers-in-law, Rick Scheffler, testified the bull involved in the collision was Pruski's bull, and that he went to the scene of the accident. He stated he saw Garcia sitting upright on a gurney and standing, and he was glad Garcia was not seriously injured. He further stated the damage to Garcia's car was severe. Scheffler testified Pruski disposed of the bull by dragging it somewhere away from the scene.
Trooper Johnson testified during his deposition that the damage to Garcia's car was a seven on a scale of one to seven, with seven being the most severe. He further testified that when a car accident involves such a degree of damage to the vehicle, there is more often than not some injury involved. Trooper Johnson's crash report contained a brief description of a car hitting a bull on State Highway 123.
2. Evidence of a Breach of Section 143.102
The relevant duty under section 143.102 is not to "knowingly permit [a bull] to traverse or roam at large, unattended, on the right-of-way of a highway." TEX. AGRIC. CODE ANN . § 143.102 ; see *343 Goode , 109 S.W.3d at 792. Garcia argues the word "knowingly permit" means a person responsible for the control of cattle must either know or should have known a head of cattle was traversing or roaming at large, unattended, on a highway's right of way. He contends Pruski's construction conflates "knowingly" with "intentionally," his construction is consistent with several canons of statutory construction, and argues two cases support his position: Goode v. Bauer , 109 S.W.3d 788 (Tex. App.-Corpus Christi 2003, pet. denied), and Weaver v. Brink , 613 S.W.2d 581 (Tex. Civ. App.-Waco 1981, writ ref'd n.r.e.).
a. Common & Plain Meaning of "Knowingly"
No part of the Texas Agriculture Code or the Code Construction Act defines "knowingly" for purposes of section 143.102. See TEX. AGRIC. CODE ANN . § 1.002 (West 2004) (providing the Code Construction Act applies to the Agriculture Code); id. § 1.003 (defining terms, but not the term "knowingly"); id. § 143.101 (defining "highway" but not "knowingly"). "Knowingly" is the adverb form of "knowing," which means "[h]aving or showing awareness or understanding" or "[d]eliberate; conscious." BLACK'S LAW DICTIONARY 888 (8th ed. 2006) ("knowing" adj. 1, 2); see In re Silver , 540 S.W.3d 530, 534 (Tex. 2018) (orig. proceeding) ("When determining the ordinary meaning of a word, we frequently consult dictionaries."). We presume the Legislature intended to include a "knowing" requirement in section 143.102. See Fort Worth Transp. Auth. v. Rodriguez , 547 S.W.3d 830, 838 (Tex. 2018) ("[E]very word or phrase is presumed to have been intentionally used with a meaning and a purpose."); see also Beck v. Sheppard , 566 S.W.2d 569, 572 (Tex. 1978) (noting legislative history supports that "the inclusion of the requirement of a knowing violation [in section 143.102 ] was deliberate.").
b. "Knowingly" in Section 143.102 Does Not Include "Should Have Known"
To violate section 143.102, a person who is responsible for the control of a bull, at the very least, must have permitted the bull "to traverse or roam at large, unattended, on the right-of-way of a highway" with an awareness or understanding of those circumstances. Such a person who "should have known"-but does not actually know-his bull was permitted to traverse or roam at large, unattended, on a highway's right-of-way, lacks the requisite awareness or understanding required by section 143.102. Consequently, Garcia's construction is inconsistent with the common and plain meaning of "knowingly," and we need not address his contentions that his position is consistent with several canons of statutory construction. See Tex. Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 639 (Tex. 2010) (stating we consider statutory text's plain language first, and if the text is not clear, we may then resort to canons of statutory construction and aids to interpretation).
c. Goode and Weaver
Goode v. Bauer and Weaver v. Brink do not support construing "knowingly" in section 143.102 as "knew or should have known." In Goode , the only issue the court of appeals decided was whether the trial court erred by refusing to submit a jury question stating that a violation of section 143.074 in a county that has adopted a stock law is negligence per se. See 109 S.W.3d at 790. The court rejected the appellant's position and held a violation of section 143.074 was not negligence per se, but acknowledged section 143.074 could otherwise constitute a statutory duty. See id. at 791-92. And in Weaver , the trial court found the defendant "knew or should have known his cows had been loose on or *344 near" the highway. 613 S.W.2d at 582. The issue on appeal was not whether the trial court misconstrued "knowingly" under section 143.102, but whether the evidence supported the finding. See ids="9974701" index="66" url="https://cite.case.law/sw2d/613/581/">id. at 582-83. Thus, the courts of appeals in Goode and Weaver did not address the propriety of construing "knowingly" in section 143.102 as "knew or should have known." See id.
3. Application of Law to Facts
We conclude "knowingly" in section 143.102 is not violated if a person who is responsible for controlling a bull merely should have known the bull had been permitted to traverse or roam at large, unattended, on a highway's right-of-way. Garcia relies on the following evidence: (1) Pruski knew a head of cattle had escaped on a previous occasion when the gate was left open; (2) Pruski always kept the gate locked because he believed cattle would get out if the gate was not locked; and (3) Pruski used a latch, and did not use the lock, on the date of the accident.[2] This evidence does not support a reasonable inference that Pruski was aware his bull had broken the latch and wandered onto the highway. We hold Garcia failed to produce summary judgment evidence sufficient to raise a genuine issue of material fact that Pruski knowingly permitted the bull to traverse or roam at large, unattended on a highway. We therefore affirm the trial court's judgment as it relates to Garcia's allegation that Pruski was negligent by violating section 143.102.
4. Evidence of a Breach of the Stock Law Provisions
The statutory duty in the stock law provisions of chapter 143 is that "a person may not permit any animal of the class mentioned in the proclamation to run at large in the county or area in which the election was held." See TEX. AGRIC. CODE ANN . § 143.074(a). This provision, which does not include a knowing requirement, may be breached by evidence showing the person was at fault in allowing any mentioned animal to run at large. See id. ; Goode , 109 S.W.3d at 792. Garcia produced the 2010 Proclamation adopting a stock law for Wilson County and mentioning "cattle," which includes bulls. Garcia also produced evidence showing Pruski failed to take reasonable measures to ensure his cattle would not escape, such as locking the gate and using a cattle guard. Garcia's evidence shows, in addition to the bull breaking the latch, that there was a sufficient risk of cattle escaping that Pruski believed it necessary to keep the gate locked.[3] Viewing the evidence in a light most favorable to Garcia and drawing all inferences in his favor, we hold Garcia raised a genuine issue of material fact that Pruski was at fault for permitting his bull to roam at large in Wilson County. See *345 TEX. AGRIC. CODE ANN . § 143.074(a) ; Goode , 109 S.W.3d at 792.[4]
F. Proximate Cause of Injury
The final element of Garcia's negligence claim is proximate causation,[5] which requires that Garcia show that Pruski's violation of chapter 134 was a cause-in-fact of Garcia's damages and his damages were a foreseeable consequence of Pruski's violation of chapter 134. See Crosstex N. Tex. Pipeline, L.P. , 505 S.W.3d at 607 ; IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason , 143 S.W.3d 794, 798 (Tex. 2004). These components of proximate cause "cannot be satisfied by mere conjecture, guess, or speculation." IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. , 143 S.W.3d at 798-99.
1. Cause in Fact
"Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." Id. at 799. "[C]ause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible." Id. "Negligent conduct is a cause of harm to another if, in a natural and continuous sequence, it produces an event, and without the negligent conduct such event would not have occurred." Lear Siegler, Inc. v. Perez , 819 S.W.2d 470, 471 (Tex. 1991).
Garcia produced evidence showing his car collided with Pruski's bull, which Pruski had negligently permitted to escape from his property. Garcia also produced evidence showing Pruski's property was located along State Highway 123, and the area where the bull had been confined was approximately thirty feet from State Highway 123. Garcia's evidence also shows the bull escaped after Pruski left the gate latched but unlocked in order for his contractor to enter the property without a key. This evidence shows that it was a natural and continuous sequence of events from Pruski permitting the bull to roam outside of his property to the bull wandering onto State Highway 123 where Garcia's car collided with the bull. See id.
2. Foreseeability
"The test for foreseeability within the context of proximate cause is whether a person of ordinary intelligence would have anticipated the danger his or her negligence created." Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co. , 298 S.W.3d 216, 226-27 (Tex. App.-San Antonio 2009, pet. denied) (citing Sw. Key Program, Inc. v. Gil-Perez , 81 S.W.3d 269, 274 (Tex. 2002) ). Garcia produced evidence showing Pruski's property where the bull had been confined was thirty feet from State Highway 123 and that the last time a head of cattle was permitted to roam outside of Pruski's gate, the head of cattle wandered onto State Highway 123 and was struck by a vehicle. We hold that Garcia produced some evidence showing a person of ordinary intelligence would have anticipated the danger to drivers on State Highway 123 that was created by Pruski negligently *346 permitting his bull to roam outside of the gate. See ids="11417765" index="80" url="https://cite.case.law/sw3d/81/269/#p274">id.
CONCLUSION
We conclude that Garcia produced evidence sufficient to raise a genuine issue of material fact as to all of the challenged, essential elements of his negligence claim based on Pruski's violation of the stock law provisions of chapter 143 of the Texas Agriculture Code. Because Garcia does not challenge on appeal the trial court's summary judgment as to any alleged breach of a common law duty and there is no evidence Pruski violated section 143.102, we must affirm the trial court's judgment to the extent it disposes of Garcia's claims based on a common law duty and a violation of section 143.102. We reverse the remainder of the trial court's judgment and remand this case for further proceedings consistent with this opinion.

With regard to the duty element of Garcia's negligence claims based on chapter 143, Pruski's position on appeal is that "the only duty owed by ... Pruski to ... Garcia was the duty statutorily imposed by [section] 143.102." In other words, it is undisputed that Pruski owed Garcia a duty under section 143.102.

Garcia also relies on Pruski's sworn interrogatory answer that identified Garza and Scheffler as individuals who helped Pruski search for escaped cattle before the accident in this case. We question whether the response was intended to be an admission that Pruski knew about his cattle escaping at any time before the accident. Even if it could be construed as such, it is unclear whether the reference to cattle escaping is to the prior incident years before the accident in this case or on the date of the accident. To the extent the interrogatory could raise a reasonable inference that Pruski knew his bull had escaped, the response is not evidence showing Pruski knowingly permitted the bull to roam at large on the highway's right of way and discovered those facts with sufficient time for Pruski's breach to have been the proximate cause of the accident.

Pruski cites to conclusory summary judgment evidence which consisted of opinions, without explanation, that a cattle guard was unnecessary and using merely a latch was sufficient to keep cattle from escaping. We hold this does not conclusively negate the breach element of Garcia's claim.

None of the evidence Pruski produced conclusively established the absence of vital facts that Garcia's evidence would support if the evidence is taken as true and if all favorable inferences are drawn in Garcia's favor. See Katy Venture , 469 S.W.3d at 163.

We note that Pruski never expressly challenged that Garcia suffered no damages as a result of the collision with Pruski's bull. To the extent Pruski's motion could be construed as presenting such a ground for summary judgment, we note Garcia produced evidence that he was transported by EMS to an emergency room and that there was damage to Garcia's vehicle.