Opinion filed October 30, 2025



## In The

# Eleventh Court of Appeals

_____

## No. 11-23-00085-CV

_____

**CHARLOTTE MULLINS, Appellant**

**V.**

**SANDY MCWHIRTER, INDIVIDUALLY, AS WRONGFUL DEATH BENEFICIARY, AND AS REPRESENTATIVE OF THE ESTATE OF ROWDY ROY ESCOBAR, DECEASED; AURELIANO RAMOS, INDIVIDUALLY AND AS WRONGFUL DEATH BENEFICIARY OF ROWDY ROY ESCOBAR, DECEASED; AND MAKENZIE GUARDIOLA, AS NEXT FRIEND OF TALIA KEHLANI ESCOBAR, Appellees**

**On Appeal from the 42nd District Court**
**Coleman County, Texas**
**Trial Court Cause No. CV20-01152**

### O P I N I O N

This appeal arises from a tragic accident wherein a young man riding on a motorcycle collided with a black cow on a U.S. highway at night. The jury found

the owner of the cow to be liable.  Because the evidence is legally insufficient to support the jury's finding that the cow's owner knowingly permitted it to traverse or roam at large, unattended, on the right-of-way of a highway, we reverse and render. *See* TEX. AGRIC. CODE ANN. § 143.102 (West 2025).

*Background Facts*

Rowdy Roy Escobar traveled on his motorcycle from his home in Abilene on July 18, 2020, to help fight a wildfire in Coleman County.  At some point, Escobar went fishing that evening before driving back to Abilene.  At approximately 1:30 a.m. on July 19, Escobar's motorcycle struck a black cow owned by Appellant, Charlotte Mullins, resulting in him suffering fatal injuries.  The accident occurred on U.S. Highway 84 in rural Coleman County.

Appellees are Escobar's survivors or their representative.  Sandy McWhirter is Escobar's mother and the representative of his estate.  Aureliano Ramos is Escobar's father.  Talia Kehlani Escobar is Escobar's minor daughter.  Her mother, Makenzie Guardiola, appeared for her as her next friend.[1]

Mullins's husband, James Mullins, died in 2018.[2]  Prior to his death, James ran cattle on property that he and Mullins leased from Brian Jaynes along U.S. Highway 84.  Mullins took over responsibility for the cattle after her husband's death.

Mullins had residences in Coleman County and Bartonville.  On the night of the accident, Mullins was in Bartonville, approximately 200 miles from Coleman County.  At the time, Mullins had forty-seven head of cattle pastured on the west side of U.S. Highway 84.  The cow that Escobar struck came from the pasture on the

---

[1]Mullins asserts on appeal that Guardiola did not properly enter an appearance as the minor's next friend.  Because of our disposition of this appeal, we do not address this contention.

[2]We will refer to James Mullins as "James" in this opinion.

2

west side of the highway. Mullins testified that, under her agreement with Jaynes, she was responsible for maintaining the fences on the property.

Mullins had last seen the fences a week prior to the accident. She testified that she was aware of what a "suitable" fence was for containing her cattle and that the fences on the property were suitable for that purpose. When asked about what constituted a suitable fence, Mullins first stated that the fence should be six feet tall but then said five feet tall. Mullins also said that the posts in a fence should be spaced six to eight feet apart and that the fence should have six to eight strands of barbed wire. Mullins further stated that a fence should be kept free of overgrowth. Mullins opined that the fence on the property was "suitable."

Cory McFadden helped Mullins maintain the fences and helped with her cattle. Chris Guerrero provided farming services to Mullins, but he does not take care of her cattle and fences. Guerrero happened to be baling hay on the property at the time of the accident.

Mullins became aware of a fire in the area when her sister-in-law called to tell her about it at around 9:00 p.m. Her sister-in-law described it as a "bad" fire that had caused the highway to be shut down at one point. Mullins testified that "fires spook cows," it could cause them to escape their pasture, and that she was concerned that night, but that she did not do anything because she was told that everything was okay. In that regard, Mullins's sister-in-law told her that she had driven the highway, and she did not see any cows out. However, Mullins did not specifically ask her sister-in-law to check for cattle on the highway. Mullins testified that her house in Bartonville was three hours away and that she does not drive at night.

Mullins testified that she did not know how the cow got out or what caused it to get out. She further testified that she did not have any cattle that had escaped after she took over responsibility for the cattle after James died. Mullins was asked about

prior instances of cattle escaping from the pasture. She testified that a bull belonging to James's mother got out a long time ago that resulted in a fatal collision.

Guerrero testified that as he pulled out to leave Mullins's pasture, he could hear Escobar's motorcycle and see its headlight. He estimated that he was 100 yards away from where the collision occurred and that he heard it happen. Guerrero stated that Escobar collided with the cow on top of a hill, and he opined that Escobar did not have time to see the cow.

Jaynes testified that Mullins and her husband ran cattle on his pasture west of Highway 84 since he bought the property in 1991. He confirmed that the maintenance of the fences was exclusively the responsibility of Mullins and her husband.

McFadden testified that he helped to maintain the fences for James and Mullins. He had worked for James and then Mullins since 2016. McFadden stated that Mullins had the responsibility for inspecting the fences.

Les Cogdill is the sheriff of Coleman County. He knew James from dealing with calls about cows being out for a variety of reasons. He described three instances of him dealing with cows being out from the Mullins's pasture between 2008 and 2016. In one instance, a motorist drove through the fence causing cows to escape. In another instance, a gate had been left open causing an escape. The third instance was unexplained because the gates were closed and the fences were up. Sheriff Cogdill dealt with James on each of these three instances, and each instance involved a cow that belonged to James. Sheriff Cogdill testified that these three instances occurred prior to 2017, "from 2008 to 2016." During his testimony, Sheriff Cogdill was also asked about a 1996 incident wherein a bull belonging to Mullins's mother-in-law caused a fatal accident on Highway 84. This was the same incident that Mullins described in her testimony.

4

Appellees called Bob Kingsbery as an expert in livestock fencing, livestock behavior, and ranch management. Kingsbery inspected the fence that separated Mullins's pasture from Highway 84. His purpose in doing so was to determine if it was a suitable fence to contain cows.

Kingsbery determined that Mullins had actual knowledge of the fires in the area occurring the day before the accident as well as knowledge of the danger that fire posed to cattle and fences. He opined that "she owns cattle, and I think pretty common knowledge that fires are not good for cattle or fences." He also opined that she had knowledge of the harm posed to motorists by cattle. Kingsbery testified that Mullins should have contacted someone to check on her cattle when she learned of the fires.

Kingsbery testified that Mullins's description of a suitable fence in her testimony of being five or six feet tall was that of "a great fence." He stated that the industry standard for a perimeter fence is for a minimum height of forty-eight inches, and that Tractor Supply recommends on its website a minimum height of fifty-four inches. Kingsbery opined that with steel "T" posts, posts should be spaced ten to twelve feet apart.

Kingsbery physically inspected the fence ten months after the collision. He observed that the fence had "brush and grass and trees growing" in it. Kingsbery opined that "you can't really maintain or inspect a fence properly if you can't see it. And also brush and trees will damage a fence, loosen the wires." In one location of the fence, Kingsbery measured its height at approximately forty-one inches. He measured a height of thirty-eight inches in another area. Kingsbery testified that this height made it easy for livestock to graze over and to step over. He also observed that the barbed wire on the fence was very old causing it to lose its sharpness and that the strands were loose. A video and photographs of the fence were admitted at trial in support of Kingsbery's testimony.

5

Kingsbery concluded that the fence was not maintained sufficiently for it to constitute a suitable fence to pen cattle. He based this conclusion on the height of the fence, the looseness of the wires, and the overgrowth of brush into the fence. He opined that "an inadequate fence with cattle behind it is always going to create a hazard if cattle get out." When asked if he had an opinion "as to whether it was reasonably certain one of [Mullins's] cows would get out on [Highway] 84," Kingsbery replied that "it was inevitable."

On cross-examination, Kingsbery agreed that no one told Mullins that she had a cow out that night, including her sister-in-law with whom she had spoken that night. Kingsbery further testified that he did not know how the cow escaped or where the cow escaped. He also was not aware of the particular condition of the fence that permitted the cow to escape. He agreed that livestock can escape through no fault of its owner. Kingsbery further agreed that he was not there to testify that Mullins "knowingly permitted her cow to roam at large," but that he was only there to testify about the condition of her fences.

On redirect examination, Appellees' attorney asked Kingsbery "how . . . this cow [got] out onto [Highway] 84," to which he replied, "It crossed over the fence along 84 . . . [b]ecause the fence was low, in bad condition, covered with brush, [and] the wires were loose." Additionally, Kingsbery was asked by Appellees' attorney, "What's probable in this case based upon the circumstantial evidence?" Kingsbery replied, "Based on the condition of the fence, it's that the cow just climbed over the fence or stepped over it."

During closing argument, Appellees' attorney asserted that the case was about "an absentee rancher who turned a blind eye, her cow escapes, and we lose [Escobar]." He asked the jury to focus on the circumstantial evidence, and that it was reasonably certain by her conduct that a cow would get out. Counsel argued that "[y]ou can't run cows from the Metroplex, period. Because you have to tend

fences. You have to feed and water them. You have to make sure that herd is protected." Counsel further argued that Mullins knew of the danger posed by cattle escaping on the highway, that she knew of the condition of the fence, and that Kingsbery's testimony was evidence that the fence was insufficient. Further, counsel asserted that Mullins knew that "[f]ires spook cows" and that she could have called someone to check on her cattle for her.

The jury affirmatively answered the following liability question: "At the time of the occurrence, did Charlotte Mullins knowingly permit her cow to traverse or roam at large, unattended, on the right-of-way of US Highway 84?" The jury did not award any damages to Escobar's mother and father based upon their status as wrongful death beneficiaries. The jury awarded $210,000 to Escobar's minor child for pecuniary loss that will be incurred in the future, and $40,000 for her future mental anguish. Finally, the jury awarded $10,000 for Escobar's funeral and burial expenses.

*Analysis*

In her first issue, Mullins challenges the legal sufficiency of the evidence supporting the jury's affirmative finding as to liability under Section 143.102 of the Texas Agriculture Code. She asserts that there is no evidence that she knowingly permitted her cow to roam at large on Highway 84. She bases her evidentiary challenge on the contention that there is no evidence regarding how long the escaped cow had been out of its enclosure, on how it escaped, or that she was aware of the cow's presence on the highway prior to the accident.

When parties challenge the legal sufficiency of the evidence supporting an adverse finding on which they did not have the burden of proof at trial, they must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the

7

evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

In a case tried to a jury, a party can preserve an argument that the evidence is legally insufficient to support a finding through "(1) a motion for directed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial." *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 748–49 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex.1988)).

8

Here, Mullins moved for an instructed verdict[3] on liability, objected to the submission of the liability question on the basis that there was no evidence to support its submission, and challenged the liability finding in her motion for new trial.

*Applicable Law of Liability for Escaped Livestock on a Texas Highway*

"There is no common-law duty requiring livestock owners to restrain their animals within fences. Livestock owners generally may allow their animals to run at large." *Arraby Props., LLC v. Brown*, 695 S.W.3d 532, 540–41 (Tex. App.— Houston [1st Dist.] 2023, pet. denied) (first quoting *Pruski v. Garcia*, 594 S.W.3d 322, 323 (Tex. 2020); and then citing *Gibbs v. Jackson*, 990 S.W.2d 745, 747 (Tex. 1999)). "Texas does, however, impose two statutory duties to restrain livestock." *Id.* at 541 (first citing *Pruski*, 594 S.W.3d at 323; then citing *Gibbs*, 990 S.W.2d at 748; and then quoting *Billelo v. SLC McKinney Partners, L.P.*, 336 S.W.3d 852, 854 (Tex. App.—Dallas 2011, no pet.)) (The duty to confine animals within fences is "purely statutory in nature.").

The Texas Supreme Court's opinion in *Pruski* is significant because it is the court's most recent opinion addressing the liability of a livestock owner for an auto accident involving escaped livestock occurring on a state highway.[4] The First Court of Appeals' opinion in *Arraby Properties* is also significant because it is the only published opinion that has applied *Pruski* in this context.

*Pruski v. Garcia*

In *Pruski*, a summary judgment case, the plaintiff asserted that the livestock owner was negligent for failing to properly restrain and restrict his bull from gaining access to a state highway. *Garcia v. Pruski*, 563 S.W.3d 333, 337 (Tex. App.—San

---

[3]"'Directed verdict' and 'instructed verdict' mean the same thing; Texas courts use the terms interchangeably." Adele Hedges & Daniel K. Hedges, 2 *Texas Practice Guide: Civil Trial* § 12:44 (2025 ed.).

[4]We use the term "livestock owner" in this appeal because that is Mullins's status in this case. We express no opinion in this case on the liability of a person or entity that is not a livestock owner.

Antonio 2018), *rev'd in part on other grounds*, *Pruski*, 594 S.W.3d at 330.[5] The livestock owner asserted that the bull escaped by breaking a latch on the gate. *Id.* at 342. Additionally, the livestock owner testified that cattle had only escaped from his pasture on one prior occasion eight years earlier when someone left a gate open. *Id.*

The plaintiff in *Garcia* asserted that a livestock owner knowingly permits cattle to roam at large if he either knows or should have known that his cattle was on the highway. *Id.* at 343. The Fourth Court of Appeals held that "knowingly" in Section 143.102 does not include "should have known." *Id.* at 343–44. The court rejected the plaintiff's reliance on the prior escape and the livestock owner's failure to lock the gate as constituting conduct in violation of Section 143.102. *Id.* at 344. As set out below, the Texas Supreme Court did not disturb these holdings in its opinion in *Pruski*.

Before the Texas Supreme Court, the parties in *Pruski* disputed whether the standard for a violation of Section 143.102 or the standard set out in Section 143.074 applied to the case. 594 S.W.3d at 325–28; *see* AGRIC. § 143.074. As noted by the court, "[t]he parties [did] not dispute the contours of civil liability under [S]ection 143.102." *Id.* at 326. The court in *Pruski* determined that Section 143.102 provided for a higher standard than that for liability under Section 143.074 because Section 143.102 requires a "knowing" mental state. *Id.* at 324, 327–28. In making this determination, the court generally addressed the conduct that would result in a violation of Section 143.102. *Id.* at 326–27. The court ultimately concluded that the standard set out in Section 143.102 provided "the only potentially applicable

<hr/>

[5]The facts from *Pruski* are more developed in the Fourth Court of Appeals' opinion. Accordingly, we will cite it for the facts of the case. We refer to the Texas Supreme Court's opinion as "*Pruski,*" and we refer to the opinion of the Fourth Court of Appeals as "*Garcia*."

standard of civil liability" for a driver that collided with livestock on a state highway. *Id.* at 330.

Because the collision giving rise to this appeal occurred on U.S. Highway 84, the standard for criminal liability set out in Section 143.102 applies to this dispute. *See* AGRIC. § 143.101 (defining "highway" as including a U.S. highway); *Id.* § 143.108 (the violation of Section 143.102 constitutes a Class C misdemeanor); *Pruski*, 594 S.W.3d at 324. As noted in *Pruski*, most litigants and courts have assumed that a violation of this statute gives rise to a tort action because the statute creates an appropriate standard of care for civil liability purposes. 594 S.W.3d at 326.

As in *Pruski*, neither party here disputes that Section 143.102 creates a standard of care for civil liability purposes for livestock owners whose animals stray onto Texas highways. The parties and the trial court assumed the application of the statute to impose civil liability on Mullins. For purposes of this appeal, we similarly assume, without deciding, that Section 143.102 establishes the applicable standard of care. *See id.*; *Arraby Props.*, 695 S.W.3d at 542. Under that assumption, "[S]ection 143.102 provided the exclusive standard" for Mullins's liability as a livestock owner. *See Pruski*, 594 S.W.3d at 330; *Arraby Props.*, 695 S.W.3d at 541.

Section 143.102, titled "Running at Large on Highway Prohibited," provides that "[a] person who owns or has responsibility for the control of" certain livestock, including cows, "may not knowingly permit the animal to traverse or roam at large, unattended, on the right-of-way of a highway." AGRIC. § 143.102. "[F]or there to be any liability under [Section 143.102], whether civil or criminal, the defendant must 'knowingly permit' the animal to roam at large [on the highway]." *Pruski*, 594 S.W.3d at 326. The court in *Pruski* cited the full statutory definition of "knowingly" that is set out in the Penal Code as the applicable guideline:

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*Id.* at 326–27 (quoting TEX. PENAL CODE ANN. § 6.03(b) (West 2021)).

Here, the trial court's charge contained the full statutory definition of "knowingly." When, as here, the parties did not object at trial to the substance of the law set forth in the charge, we review the sufficiency of the evidence in light of the legal standards contained in the unobjected-to charge. *See Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 407 (Tex. 2016) ("Our review is restricted to the jury charge as submitted when there was no objection to the instruction. [I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge.") (internal citations omitted).

As set out below, Appellees focus on the latter part of the statutory definition of "knowingly." They contend that, as result of the condition of Mullins's fence, it was reasonably certain that her livestock would escape the pasture onto the highway right-of-way. The "result" in this context is the cow escaping from the pasture in which it was located.

The Texas Supreme Court in *Pruski* noted that the term "permit" usually "connotes awareness or assent, as opposed to mere oversight or negligence." *Pruski*, 594 S.W.3d at 327 (citing various dictionary definitions). The court further noted that with respect to "permit," the duty is to not allow animals "to roam or run at large. Historically, to roam or run at large has meant more than temporary escape. Instead, it refers to animals allowed as a matter of course to graze and move about freely in an unconfined area." *Id.* Thus, Section 143.102 is violated only "if the

livestock owner permits the animal to traverse or roam at large, unattended, on the right-of-way of a highway and does so with the knowing mental state traditionally applied in criminal law." *See id.*

Here, the trial court's charge defined "permit" as "to consent to expressly or formally, or to give leave." *See Rose v. Ben C. Hebert Heirs*, 305 S.W.3d 874, 881 (Tex. App.—Beaumont 2010, no pet.) (using the same definition for "permit"). Once again, this definition applies to our review of Mullins's evidentiary challenge because she did not object to it. *See Seger*, 503 S.W.3d at 407. However, we observe that this definition does not materially differ from the definition given by the Texas Supreme Court in *Pruski*. 594 S.W.3d at 327.

*Arraby Properties, LLC v. Brown*

In *Arraby Properties*, a motorist struck a cow roaming on a state highway during the early morning hours. 695 S.W.3d at 535. Two days before the accident, a cow had been reported missing from a property occupied by an elderly couple, the parents of the owners of Arraby Properties, LLC. *Id.* After a bench trial, the trial court determined that the defendant had knowingly permitted the cow to roam at large on the highway. *Id.* at 539. In reversing the trial court's judgment, the First Court of Appeals determined that there was legally insufficient evidence that the defendant knowingly permitted the cow to run at large. *Id.* at 545–49.

The court in *Arraby Properties* noted that "Section 143.102 does not impose a duty to prevent all escapes of fenced animals." *Id.* at 546. It cited *Beck v. Sheppard*, 566 S.W.2d 569, 572–73 (Tex. 1978) for the proposition that "[t]he mere fact an animal escapes and makes its way onto a highway does not support a finding of culpability." *Id.* at 546–47. The court in *Arraby Properties* also cited the Fourth Court of Appeals' opinion in *Garcia*, 563 S.W.3d at 344, for the proposition that "mere knowledge that a cow may escape from pastured land is insufficient to establish the 'knowingly' element under the statute." *Id.* at 547. In that regard, the

13

Fourth Court of Appeals held in *Garcia* that Section 143.102 is not violated if a person who is responsible for controlling livestock merely "should have known— but does not actually know" that his livestock was permitted to traverse or roam at large, unattended, on a highway's right-of-way. *Garcia*, 563 S.W.3d at 343; *see Arraby Properties*, 695 S.W.3d at 547 (citing *Garcia*).

Similar to the facts in this case, the plaintiff in *Arraby Properties* asserted that the fence at issue was insufficient to contain livestock. 695 S.W.3d at 538, 548. In fact, Kingsbery also testified as an expert for the plaintiff in *Arraby Properties*. *Id.* at 537–38, 548. However, there was no evidence in *Arraby Properties* that the fence was not maintained or that there was anything wrong with the fence at the time of the accident because Kingsbery never inspected the property or the fence, and neither did the investigating officers. *Id.* at 548–49. The First Court of Appeals concluded that, because there was no evidence that the fence was in disrepair or unsuitable, or that any cattle had previously escaped from the property, there was no more than a scintilla of evidence supporting the defendant's alleged knowing conduct.

*Summary of Applicable Law*

*Pruski* instructs us that Section 143.102 is violated only "if the livestock owner permits the animal to traverse or roam at large, unattended, on the right-of-way of a highway and does so with the knowing mental state traditionally applied in criminal law." 594 S.W.3d at 327. The statute's inclusion of the word "permit" means that it is not violated by "mere oversight or negligence." *Id.* As noted in *Arraby Properties* and *Garcia*, the statute is not violated if the livestock owner merely "should have known—but does not actually know" that his livestock are roaming along the right-of-way of a state highway. *Arraby Properties*, 695 S.W.3d at 547; *see Garcia*, 563 S.W.3d at 343. Further, to roam or run at large means "more than temporary escape," but rather "it refers to animals allowed *as a matter of*

14

*course*" to roam along the right-of-way of a state highway. *Pruski*, 594 S.W.3d at 327 (emphasis added).

*Application*

We first observe that Section 143.102 makes no distinction between an absentee livestock owner and a resident livestock owner. To the contrary, the duty owed by a livestock owner under Section 143.102 is uniform irrespective of the distance between the livestock owner's whereabouts and his or her cattle.

Additionally, the fact that there was a fire in the area does not alter the duty owed by a livestock owner. To hold otherwise would place a duty on a livestock owner to patrol his or her livestock along a state highway right-of-way to make sure they remain confined. That duty does not exist—the only duty imposed upon a livestock owner with cattle near a Texas highway is the one set out in Section 143.102 to not knowingly permit them to roam at large as a matter of course. *Pruski*, 594 S.W.3d at 327. Further, an escape caused by a cow being "spooked" by a fire would constitute a temporary escape for which liability is not imposed under Section 143.102. *See id.*

Unlike the facts in *Pruski/Garcia* and *Arraby Properties*, there is evidence in this appeal that Mullins's fence was inadequate. Kingsbery personally inspected Mullins's fence, and he testified that it was insufficient to contain cattle. In reliance on this evidence, Appellees assert that, due to the condition of Mullins's fence, her cattle were effectively unconfined and that it was therefore inevitable that her cattle would roam at large. Appellees contend this situation was sufficient to rise to the level of Mullins knowingly permitting her cattle to roam at large on a highway in violation of Section 143.102.

The resolution of this appeal requires an examination of whether the evidence only shows that Mullins "should have known" that her cow might have escaped, which is a "mere negligence" standard that will not support a finding of liability

15

under Section 143.102, or whether her knowledge, if any, was sufficient to cross the threshold of being "reasonably certain" that her cow would escape. *See* PENAL § 6.03(b); AGRIC. § 143.102; *Pruski*, 594 S.W.3d at 327; *Arraby Properties*, 695 S.W.3d at 547 (citing *Garcia*, 563 S.W.3d at 344). We conclude that the evidence in this case does not support a finding of reasonable certainty on the part of Mullins.

The most probative indication of a livestock owner's knowledge of escaped cattle would be awareness that the particular livestock involved in a collision had escaped. In *Garcia* for example, the Fourth Court of Appeals focused on the livestock owner's lack of knowledge that his bull that was involved in the collision had escaped. *Garcia*, 563 S.W.3d at 344 ("This evidence does not support a reasonable inference that Pruski was aware his bull had broken the latch and wandered onto the highway.").

There is no evidence that Mullins was aware that this particular cow had escaped from her pasture. Instead, Appellees rely on evidence of prior escapes to show culpability under Section 143.102. In this regard, we must remain mindful that "permit" means "more than temporary escape. Instead, it refers to animals allowed *as a matter of course* to graze and move about freely in an unconfined area." *Pruski*, 594 S.W.3d at 327 (emphasis added). "The mere fact an animal escapes and makes its way onto a highway does not support a finding of culpability." *Arraby Props.*, 695 S.W.3d at 546–47.

Appellees contend that the evidence in this case is analogous with the evidence in *Weaver v. Brick*, 613 S.W.2d 581, 583 (Tex. App.—Waco 1981, writ ref'd n.r.e.). The evidence in *Weaver* showed as follows:

> Defendant himself testified that his cattle had gotten out from the fences and off his property on various occasions; that during a 15 year period his cattle had gotten out 5 or 6 times a year; that he knew the cattle would get out of the fences under the water gaps after a big rain; and that his cattle had been out about 4 times in the 2 or 3 month period

16

immediately prior to the accident.  The witness Owen, Police Chief of Wortham, testified that he had notified defendant 5, 6 or 7 times that his cattle were out during the first part of the year 1975.

. . . .

Defendant testified and admitted that his cows had escaped numerous times thru water gapped fences which failed and went down at least 50% of the time after a hard rain.  Defendant further testified that he inspected the fence about noon the day before the accident; that there had been a pretty good rain; that water was running thru the gully and he knew there was a good chance the fence would be down; that the fence at the creek was under water; that he could not fix it at that time; and that he did not go back and fix it that day.

. . . .

As noted, defendant testified his cows had escaped many times from their fences; that water gaps in his fences on the creeks failed or went out 50% of the time after hard rains.  The witness Owen, Chief of Police of Wortham, testified that the night before the accident he called defendant at home and told him that his cows were out; that the Navarro County Sheriff's office had called him the information; and that Mr. Weaver thanked him and said he would get them off the road.  The dispatcher on duty for the Navarro County Sheriff's office testified that he wrote out an official Sheriff's department record reflecting a complaint about cows on the Interstate at about 9:30 p. m. on the night before the accident; that he wrote on the complaint card: "Message was delivered to Mr. Weaver in Wortham that his cattle were out", and that this meant that it was confirmed to him that the message was delivered that night.

*Id.*

Here, the evidence of Mullins's knowledge of prior escapes of cattle from her pasture is clearly distinguishable from the facts in *Weaver*.  There was evidence that the defendant in *Weaver* knew that his cattle escaped five to six times a year over a fifteen-year period, that they had escaped four times in the two-to-three-month period before the accident, and that they escaped approximately fifty percent of the

17

time when it rained heavily. Further, the defendant in *Weaver* knew that his cattle were out of his pasture on the night before the accident.[6] The evidence of prior escapes in this appeal pales in comparison to the evidence in *Weaver*.

Common sense dictates that a history of recent cattle escapes would be more probative than escapes that are remote in time. Further, an escape that is "too remote" in time is no evidence that a livestock owner knowingly permitted the particular livestock involved in a collision to roam at large, unattended. Here, the evidence that a bull owned by Mullins's mother-in-law escaped more than twenty years prior to the accident is simply too remote in time and ownership to constitute evidence that Mullins knowingly permitted this cow to roam at large on the highway.

Sheriff Cogdill testified about three instances of James's cattle being out of the pasture between 2008 and 2016, but two of those instances were not the result of an allegedly insufficient fence—in one instance a vehicle had driven through the fence and on another occasion, someone had left the gate open. Those two escapes are not evidence that the condition of Mullins's fence was such that it was reasonably certain that her cattle would escape from her pasture.

That leaves only one additional instance of a cattle escape from Mullins's pasture. But that instance happened at least three years prior to the accident giving rise to this appeal and the cause of that cattle escape was unexplained. Because of the unknown cause of that escape, as well as the fact that it was more than three years prior to this tragic accident, we conclude that it is no more than a mere scintilla of evidence supporting Mullins's alleged knowing conduct. *See City of Keller*, 168 S.W.3d at 810 (stating evidence is legally insufficient when "the evidence offered to prove a vital fact is no more than a mere scintilla").

---

[6]Appellees acknowledge that this particular fact is not present in this appeal.

18

Liability is only imposed under Section 143.102 against livestock owners that knowingly permit their livestock to roam at large along state highway rights-of-way as a "matter of course." *Pruski*, 594 S.W.3d at 327. Here, there was no evidence showing that Mullins permitted her cattle to roam along U.S. Highway 84 as a matter of course. And despite Appellees' evidence that Mullins's fence was insufficient, there is no evidence in the form of recent escapes to show that Mullins was reasonably certain that her cattle would escape from her pasture. Accordingly, we sustain Mullins's first issue.

Because of our disposition of her first issue, we do not reach Mullins's other issues. *See* TEX. R. APP. P. 47.1.

### *This Court's Ruling*

We reverse the judgment of the trial court and render judgment in favor of Appellant, Charlotte Mullins.


JOHN M. BAILEY
CHIEF JUSTICE


October 30, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.